UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALLY WHITE, : | |
| : | Civil Action No. 10-4078 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| SMITHS DETECTION, INC., et al., : | |
| : | |
| Defendants. : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Defendants Smiths Detection, Inc., ("Smiths Detection" or "Smiths") and Brian Bark to dismiss various claims in the Complaint ("Complaint") [docket entry 1] pursuant to Federal Rule of Civil Procedure 12(b)(6) [docket entry 11]. Defendant Christopher Gane subsequently joined this motion [docket entry 25].[1] Plaintiff Sally White ("White" or "Plaintiff") has opposed the motion. The Court has considered the papers filed by the parties. It rules on this motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, Defendants' motion to partially dismiss will be granted.

**I.   BACKGROUND**

Plaintiff filed this workplace retaliation and gender discrimination action in this Court on August 9, 2010. The Complaint before the Court asserts state law causes of action. The Court

---

[1] "Defendants" shall henceforth refer to Gane, Bark and Smiths Detection.

has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Based on the allegations of the Complaint, and assuming their truth for purposes of this motion only, the Court summarizes the factual background as follows:

The Defendant Smiths Detection is in the business of chemical, biological, radiological, nuclear, explosive detection systems and in this capacity works with a number of government agencies. Plaintiff was employed by Smiths Group PLC for 17 years. Prior to leaving the company Plaintiff held the title of Vice President of Global Service Operations.

In 2008, the Smiths Detection board decided to implement a new computer software platform – SAP. The project of installing the SAP platform was known as "REACH." Plaintiff had concerns regarding the project and voiced those concerns to the board and the internal auditors. According to Plaintiff, Defendants Gane and Bark were infuriated when she raised these concerns.

Plaintiff began to experience negative consequences immediately after making her reports. During a July 2009 conference call, Plaintiff again addressed the steps necessary for proper implementation of REACH. "Mr. Bark tried to shout her down and end the call." Compl. ¶ 40. Plaintiff objected and the participants stayed on the call. During an August 20, 2009 review of Global Service Operations, Defendant Gane told Plaintiff, "[y]ou need to apologize to Brian Bark and the entire Smiths Detection board. Your hissy fit has set your career back 15 years." Compl. ¶ 41. Plaintiff alleges that had she not insisted on making changes to REACH implementation, "Smiths Detection would have risked its ability to deliver its large government contracts and breached its service obligations in key areas, potentially placing U.S. national security at risk." Compl. ¶ 42.

In June 2010, Defendant Gane informed Plaintiff that she would move from the Level 3 position of Vice President of Global Services to the lower Level 5 position of Director of Conventional X-Ray.  Plaintiff claims that this decision was made in retaliation for her voicing caution regarding the REACH program.  Instead of accepting the new position, Plaintiff resigned.

In addition to the alleged retaliation, Plaintiff asserts that she was subject to disparate treatment due to her gender in terms of "promotion practices, compensation and retaliation for complaints about pay equity."  Compl. ¶ 70.  Plaintiff was also subjected to various sexist remarks by Mr. Gane.

Based on these allegations, the Complaint pleads retaliatory discharge under New Jersey's Conscientious Employee Protection Act, violation of New Jersey's Law Against Discrimination, and intentional infliction of emotional distress.  Plaintiff seeks relief under a theory of quantum meruit and also seeks punitive damages.  After setting forth the standard by which the motion to dismiss must be evaluated, the Court will analyze the sufficiency of each claim.

## II.     DISCUSSION

### A.     Legal Standard

The Court must review this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a) requires that to state a claim for relief, a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  When evaluating the sufficiency of claims subject to the pleading requirements of Rule 8(a), the Court must apply the plausibility standard articulated by the

Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  In Twombly and Iqbal, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556.)  The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement."  Id. at 1949-50; Twombly, 550 U.S. at 555-57.  While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do.  Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557.  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims."  Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (relying on Twombly to hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").

     In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record.  Winer

Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007); Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

### B. Conscientious Employee Protection Act Claim (Count I)

The Conscientious Employee Protection Act ("CEPA") is New Jersey's "whistleblower" statute.  N.J.S.A. 34:19-1 et seq.  It protects employees from retaliation by an employer for reporting, threatening to disclose or refusing to participate in the employer's unlawful activity. N.J.S.A. 34:19-3; D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 120  (2007) ("CEPA prohibits an employer from taking adverse employment action against any 'employee' who exposes an employer's criminal, fraudulent, or corrupt activities.").  To further its remedial goals of protecting employees and deterring employers from engaging in unlawful or corrupt conduct, CEPA created a private right of action for the aggrieved employee against the employer. N.J.S.A. 34:19-5; D'Annunzio, 192 N.J. at 120.  The elements of a CEPA claim are: (1) the aggrieved employee reasonably believed that the employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against the plaintiff employee; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  Dzwonar v. McDevitt, 177 N.J. 451, 462 (2007).  A CEPA plaintiff need not demonstrate "that the activity complained of ... [constituted] an actual violation of a law or regulation," but simply that he or she "'reasonably believes' that to be the case."  Id. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000)).

With regard to the first element, the language of the statute is clear.  The employee must

5

reasonably believe that the practice in question:

>	(1) is a violation of a law, or a rule or regulation promulgated pursuant to law...
>	(2) is fraudulent or criminal; or
>	(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare....

N.J.S.A 34:19-3c.  The Supreme Court of New Jersey has instructed that as a matter of law "the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." Dzwonar, 177 N.J. at 464.  Where such a finding cannot be supported, "[t]he trial court can and should enter judgment for a defendant[.]" Id. at 463.  While the complained-of conduct need not *actually* have resulted in any violation of law or public policy, "a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred." Id. at 464.

      This Court finds that Plaintiff's factual allegations simply do not give rise to a CEPA claim.  As a threshold matter, this Court finds that there is not "a substantial nexus between the complained-of conduct and a law or public policy."  Plaintiff does not argue, nor could she, that she reasonably believed a law was violated; instead, she contends that the premature implementation of the SAP platform was "indisputably dangerous to the public health, safety or welfare."  Pl.'s Opp'n at 8 [docket entry no. 16].  Plaintiff does not adequately allege, nor does this Court find, "the existence of a clear mandate of public policy," Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187 (1998), that substantially relates to Smiths' implementation of the SAP program.

      Essentially, Plaintiff argues that had she not objected to the flawed implementation of SAP software at Smiths Detection, Smiths would have "*risked* its ability to deliver its large

government contracts... *potentially* placing U.S. national security at risk." Compl. ¶ 42 (emphasis added).  This Court fails to see how the update of computer software constituted any real threat to national security.  Even if Smiths' ability to perform its government contracts had been compromised as a result of the SAP transition, this Court refuses to equate that with the "failure[] to prevent an explosion that blows up the Capitol or the White House."  Pl.'s Opp'n at 16.  Moreover, simply invoking the term "national security" does not provide the requisite substantial nexus.  Klein v. Univ of Med. & Dentistry of N.J., 377 N.J. Super. 28, 42 (App. Div. 2005) ("[M]erely couching complaints in terms of a broad-brush allegation of a threat to... safety is insufficient to establish the first prong of a CEPA claim.").

Because there is no substantial nexus between the complained-of conduct and any law or public policy, Plaintiff's CEPA claim is dismissed with prejudice.

### C. New Jersey Law Against Discrimination (Counts II and III)

Defendants argue that Ms. White's New Jersey Law Against Discrimination ("NJLAD") claims must be dismissed as to individual defendants Bark and Gane for failure to state a claim.  They do not seek dismissal as to the remaining defendants.  Individual liability under the NJLAD must be premised on a theory of "aiding and abetting."  Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 594 (2008).  Plaintiff has failed to plead any facts that would support a finding of aiding and abetting or any other form of liability as to Mr. Bark or Mr. Gane.  Therefore, as to Bark, Counts II and III fail to state a valid claim for relief, and they will be dismissed without prejudice.

### D. Intentional Infliction of Emotional Distress (Count IV)

The New Jersey Supreme Court has recognized a claim for intentional infliction of

emotional distress.  <u>Buckley v. Trenton Saving Fund. Soc.</u>, 111 N.J. 355, 365-66 (1988).  To establish this claim, a plaintiff must prove that a defendant acted in an intentional and outrageous way.  <u>Id</u>. at 366.  A claim upon which relief could be granted would require, at a minimum, factual allegations demonstrating that Defendants engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Id</u>.  The Complaint alleges no facts even remotely resembling outrageous and atrocious conduct by Defendants.  The Court therefore finds that the Complaint fails to state a cognizable claim for intentional infliction of emotional distress and dismisses this claim with prejudice.

  **E.**  **Quantum Meruit (Count V)**

Under New Jersey law "[q]uantum meruit is a form of quasi-contractual recovery and 'rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'"  <u>Starkey, Kelly, Blaney & White v. Estate of Nicolaysen</u>, 172 N.J. 60, 68 (2002). "To recover on the theory of quasi-contract the plaintiffs must prove that defendant was enriched, Viz., received a benefit, and that retention of the benefit *without* payment therefor would be unjust."  <u>Albrecht v. Pinto</u>, Civil No. 08-1103 (GEB), 2009 WL 3242127 at *7 (D.N.J. Oct. 7, 2009) citing <u>Callano v. Oakwood Park Homes</u> Corp., 91 N.J. Super. 105, 109 (App. Div. 1966) (emphasis added).  Plaintiff does not allege that she was not compensated for the work she did for Defendant Smiths Detection.  Rather, Ms. White's claim for quantum meruit is essentially that her annual pay increases were inadequate.  Compl. ¶¶ 92-93.  New Jersey law does not support a claim for quantum meruit where a plaintiff is compensated at a level agreed upon ex ante and simply wants larger and/or more frequent raises.  Plaintiff's claim for quantum meruit is

8

dismissed with prejudice.

### D.     Punitive Damages (Count VI)

Defendants' motion to dismiss as to Count VI of the complaint is denied with the understanding that punitive damages is not an independent cause of action.

### III.    CONCLUSION

As to Defendants Brian Bark and Christopher Gane all claims set forth in the Complaint are dismissed pursuant to Rule 12(b)(6).  As to Defendant and Smiths Detection Counts I, IV and V are dismissed.  An appropriate form of order will be filed together with this Opinion.

   s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: October 22, 2010