<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SALLY WHITE, | : | |
| | : | Civil Action No. 10-4078 (SRC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| SMITHS DETECTION, INC., et al, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court upon the motions to dismiss the First Amended Complaint ("FAC" or "Complaint") [docket entry no. 34] filed by Defendant Smiths Group, plc ("Smiths Group") [docket entry no. 39], Defendant Philip Bowman [docket entry no. 41], and Defendants Smiths Detection, Inc. ("Smiths Detection") Brian Bark, Penny Boyko, Christopher Gane, and Stephen Phipson [docket entry no. 44]. Plaintiff has opposed the motions [docket item nos. 49 and 50]. The Court requested, and the parties provided, supplemental briefing regarding whether "constructive discharge" can be applied to breach of contract claims under New Jersey law and whether an employee terminated prior to the end of the term of her employment contract is entitled to recover anything beyond the compensation she would have received under the contract through the end of its term. The Court heard oral argument on the motions on March 14, 2010. For the reasons discussed below, the Court grants in part and denies

in part the motions to dismiss.

I.     **BACKGROUND**

Plaintiff filed this workplace retaliation and gender discrimination action in this Court on August 9, 2010.  The Complaint before the Court asserts state law causes of action.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  Based on the allegations of the Complaint, and assuming their truth for purposes of this motion only, the Court summarizes the factual background as follows:

The Defendant Smiths Detection is in the business of chemical, biological, radiological, nuclear, explosive detection systems and in this capacity works with a number of government agencies.  Plaintiff was employed by Smiths Group plc for 17 years.  Plaintiff's employment was governed by a contract, dated March 30, 2002, stating that either she or the company could terminate her employment for any reasons upon six months' notice.  (FAC, Ex. A).  In June 2010, Defendant Gane informed Plaintiff that she would move from the Level 3 position of Vice President of Global Services to the lower Level 5 position of Director of Conventional X-Ray.  In her new position, Plaintiff would have reported to a Vice President of the Americas Military Programs instead of the Chief Operating Officer of Smiths Detection as she had as VP of Global Services.  In addition, as Director of Conventional X-Ray, she would supervise far fewer employees than she had in her previous position.

Rather than accept the new placement, Plaintiff sent a letter of resignation providing six months notice, as was required under her employment contract.  Defendants accepted her resignation and informed her that she need not return to work during the six-month contractual notice period.  Plaintiff was nonetheless fully compensated during the notice period.  Six weeks

following her resignation, Defendants offered to reinstate Plaintiff to her former position; Plaintiff did not accept.

**II.     DISCUSSION**

    **A.     Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims have facial plausibility. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). This means that the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. *Id.* at 1965; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974)).

### B. Implied Breach of Contract

Plaintiff argues that Smiths Group's Code of Business Ethics ("Code") constituted an implied contract. This claim is untenable. The Code was a widely disseminated policy that Plaintiff asserts employees reasonably expected was an implied contract. (FAC at ¶¶ 48, 57). Because Plaintiff had a separate written agreement stating that her employment could be terminated by either side for any reason, the Code does not create any additional contractual obligations, implied or otherwise. *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 59, 604 (D.N.J. 2003) ("[W]here an employee has executed a separate written contract in which [s]he has expressly agreed that [her] employment can be terminated 'at-will,' it is that agreement, and not the disciplinary policies and termination procedures of [her] employer's policy manual or handbook, which establishes the employee's reasonable expectations concerning the nature of [her] employment relationship.") (applying New Jersey law); *see also D'Alessandro v. Variable Annuity Life Ins. Co.*, No. 89-2052 (CSF), 1990 WL 191914, at *5 (D.N.J. Nov. 20, 1990). As such, Plaintiff has no claim pursuant to the Code for implied breach of contract

### C. Constructive Discharge

Plaintiff claims that the position she was offered as part of the company's restructuring was such a demotion as to constitute a constructive discharge. While Defendants suggest, and Plaintiff does not deny, that Plaintiff quit before even learning of the specific compensation and responsibilities the new job would entail, the Court nonetheless will move forward in its analysis. In order to establish constructive discharge, the Plaintiff must prove that her working conditions would became "so unpleasant or difficult that a reasonable person in the employee's position

would resign." *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh Pa.*, 903 F.2d 243, 249 (3d Cir. 1990). However, "[a] reduction of an employee's supervisory duties does not constitute the intolerable conditions which are necessary to establish constructive discharge." *Cherchi v. Mobil Oil Corp.*, 693 F. Supp. 1556, 162 (D.N.J. 1988); *see also Churchill v. Int'l Bus. Machs., Inc.*, 759 F. Supp 1089, 1106 (D.N.J. 1991) (fewer managerial duties does not establish constructive discharge).

The facts presented simply do not state a claim for constructive discharge. On the facts alleged, Plaintiff's move from Vice President, Global Service Operations to Director, Conventional X-ray, would not have been "so unpleasant or difficult that a reasonable person in [her] position would resign." *Schafer*, 903 F.2d at 249. Plaintiff claims that the new assignment would involve less responsibility and a reduction in salary. (FAC ¶¶ 134-136). Though Plaintiff does not assert any facts in support of her claim of reduced compensation, she does state that she would have reported to someone lower on the chain of command and supervised far fewer employees in her new position. Id. As the case law demonstrates, this diminution in responsibilities, taken as true, does not establish a claim for constructive discharge.

### D.     Breach of Contract

Ms. White claims that Smiths Group breached her employment contract "when it removed her from the office of Vice President without having given six months notice." (FAC at ¶ 87). This characterization rests on her having established constructive discharge, which she has failed to do. As it is, the contract provides that either party can terminate the employment relationship with six months notice. Because the Court does not equate Ms. White's new position with termination, the triggering event was the letter she sent submitting her resignation.

5

(FAC at ¶ 144). While Plaintiff was told she need not report to work for the remainder of the six month notice period, she was fully compensated during that time. Moreover, six weeks later, Plaintiff was offered her old position back. (FAC at ¶151). Smiths Group complied with the terms of the contract and therefore there can be no claim for breach of contract. Even assuming *arguendo* that the new position constituted a constructive discharge, Ms. White did not experience any damages. Not only did she receive compensation and benefits for six months, she also received an offer to return to her old position, which she refused. "Actual injury" is required to maintain a claim for breach of contract. *Reilly v. Ceridien Corp.*, No. 10-5142 (JLL), 2011 WL 735512, at *5 n.2 (D.N.J. Feb. 22, 2011). Accordingly, Ms. White's claim for breach of contract must be dismissed.

### E. Covenant of Good Faith and Fair Dealing

In order to prevail on her claim for breach of the covenant of good faith and fair dealing, Plaintiff must prove that: (1) a contract exists between her and the Defendant; (2) she performed under the terms of the contract; (3) Defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) Defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. *Jatras v. Bank of Am. Corp.*, No. 09-3107, 2010 WL 5418912, at *7 (Dec. 23, 2010). As already illustrated, Plaintiff's claim is fatally deficient as to the fourth element. Plaintiff was compensated during the six month notice period and does not allege that she requested relocation costs but was not paid. Her claim for breach of the implied covenant of good faith and fair dealing is therefore dismissed.

6

  **F.**  **Tortious Interference with Contract**

"A cause of action for tortious interference with contract cannot be directed against a defendant who is a party to the contract... this rule extends to agents of a corporation. *Emerson Radio Corp. v. Orion Sales Inc.*, 253 F.3d 159, 173 (3d Cir. 2001). However, where the agents have acted outside the scope of employment a claim for tortious interference may nevertheless stand. *Silvestre v. Bell Atl. Corp.*, 973 F.Supp. 475, 486 (D.N.J. 1997). Plaintiff does not allege that any of the defendants acted outside the scope of employment or agency and therefore Count Fourteen of the Complaint is dismissed.

  **G.**  **New Jersey Law Against Discrimination**

    1.  <u>Disparate Treatment</u>

The New Jersey Supreme Court has adopted the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for establishing a prima facie case of employment discrimination under New Jersey Law Against Discrimination ("NJLAD"). *Peper v. Princeton Univ. Bd. of Trustees*, 77 N.J. 55, 82 (1978). Accordingly, to establish a prima facie case for employment discrimination, Ms. White must prove that she: (1) belongs to a protected class; (2) she had been performing in the position from which she was demoted or constructively discharged; (3) nevertheless was demoted/discharged; and (4) the employer sought someone to perform the same work after she left. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 457-58 (2005). In this case, Ms. White has utterly failed to allege even the barest facts in support of the fourth prong. Assuming she has neglected to do so because Smiths Detection was in fact undergoing a restructuring and her old job no longer existed, the analogous test would be that applied in work force reduction scenarios. That is: (1) plaintiff is a member of a protected class; (2) she was

qualified to perform her job; and (3) she was laid off and other unprotected workers were retained. *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 506 (3d Cir. 1997). Though the parties do not contend that this is a work force reduction issue, the test is useful in a context where the previous position is not filled. Plaintiff has made no reference to how other employees fared during the restructuring, and thus the Court has no information on which to assess the final prong. Therefore, Counts Five, and Six of the Complaint must be dismissed.

   2.  Retaliation

The Third Circuit provides the following foundation for retaliation claims under the NJLAD:

> To advance a prima facie case of retaliation under . . . the NJLAD, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.

*Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001).

Plaintiff claims that she was constructively discharged "in retaliation for having complained about pay equity and sexual harassment." (FAC at ¶ 159). The Court has already determined that Ms. White's new position did not constitute a constructive discharge, therefore Ms. White has failed to allege the occurrence of an adverse employment action and Count Seven of the Complaint is dismissed.

   3.  Hostile Work Environment

In *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 603-604 (1993), the New Jersey Supreme Court

stated the elements of a cause of action for a hostile work environment based on gender discrimination, under the NJLAD:

> the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.

When the conduct at issue is sexual or sexist in nature, the first prong is automatically satisfied. *Id.* at 605. However, when the alleged harassment is not obviously based on the victim's sex, "the victim must make a *prima facie* showing that the harassment occurred because of her sex." *Id.*

In determining whether conduct is severe or pervasive, New Jersey courts have looked to the following factors:

> (1) the total physical environment of the plaintiffs' work area; (2) the degree and type of obscenity that filled the environment of the workplace, both before and after the plaintiffs were assigned to the specific workplace; (3) the nature of the unwelcome sexual words or sexual gestures; (4) the frequency of the offensive encounters; (5) the severity of the offensive encounters; (6) whether the unwelcome comments or gestures were physically threatening; (7) whether the offensive encounters unreasonably interfered with any plaintiff's work performance, but subject to the admonition that each plaintiff is not obliged to prove that the unwelcome comments or gestures actually did interfere with each plaintiff's work performance; and (8) whether the offensive encounters had an effect on any plaintiff's psychological well-being, but also subject to an admonition that each plaintiff need not demonstrate specific psychological harm, for, as we have noted, the nature of the harm to any plaintiff is the creation of a hostile work environment.

*Baliko v. Int'l Union of Operating Eng'rs*, 322 N.J. Super. 261, 275-76 (App. Div. 1999).

The Eighth Count of the Complaint references four instances of ostensibly harassing conduct. (FAC at ¶ 163). These incidents span from October 2008 until February 2010. Id. For purposes of this motion, the Court finds that the comments were sufficiently sexist in nature to meet the first element of the hostile work environment cause of action. *Lehmann*, at 605. The

9

Court finds that these incidents were neither frequent, nor severe enough to state a claim. Moreover, there is not the slightest indication that a reasonable woman would find any of these comments physically threatening. As such, Ms. White's claim for a hostile work environment under the NJLAD must be dismissed, and therefore the Ninth Count of the Complaint for negligent failure to prevent such harassment, is also dismissed.

    4.  Individual Liability

Individuals may only be held liable under the NJLAD pursuant to an aiding or abetting theory. *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004). To make such a finding, the employer must first be found liable. *Id.* at 82-83. Because the Court finds no NJLAD violation for discriminatory demotion, constructive discharge, retaliation or hostile work environment, the individual defendants cannot be held liable for aiding and abetting on those grounds. However, the Court is aware that none of the Defendants have moved to dismiss Count Four of the Complaint (unequal compensation) and therefore makes no ruling as to individual liability on those grounds.

  **H.**  **Personal Jurisdiction over Defendant Bowman**

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Mr. Bowman. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). This Court may exercise either general or specific personal jurisdiction over a defendant. *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008). General jurisdiction exists where the defendant maintains "continuous and systematic" contacts with the forum. *Provident Nat'l v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Plaintiff has failed to demonstrate that Mr. Bowman has "continuous and systematic" contacts with New Jersey. Specific personal jurisdiction can arise only where a court has found "that there was some act by which the defendant 'purposefully

availed' itself of the privilege of conducting activities within the forum." *Mellon Bank (East) PSFS v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993).  As before, Plaintiff has failed to make the requisite showing.  Finally, Plaintiff attempts to invoke the alternative "effects test" yet fails to show that Mr. Bowman's acts were "aimed at the forum itself." *Minerva Marine, Inc. v. Spiliotes*, No. 02-2517 (WHW), 2006 WL 680988, at *6 (D.N.J. Mar. 13, 2006).  Because Plaintiff has failed to demonstrate that the Court has personal jurisdiction over Mr. Bowman, the Complaint is dismissed as against him.

### III. CONCLUSION

For the foregoing reasons, this Court will grant in part and deny in part the motions to dismiss pursuant to Rule 12(b)(6).  An appropriate form of order will be filed together with this Opinion.

       s/Stanley R. Chesler
       STANLEY R. CHESLER
       United States District Judge

DATED: April 15, 2011