ELLEN O'CONNELL
ATTORNEY AT LAW

LAW OFFICE OF ELLEN O'CONNELL, LLC
P.O. BOX 132
30 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932-0132
P (973) 295-6800
F (973) 295-6799

EOC@ELLENOCONNELLESQ.COM

February 1, 2012

Hon. Michael A. Shipp
United States District Court
Martin Luther King Jr. Federal Bldg.
50 Walnut Street
Newark, NJ 07101

  Re: White v. Smiths Detection, Inc.
    <u>Docket No. 2:10-cv-04078-SRC/MAS</u>

Dear Judge Shipp:

  Please accept this letter-brief on behalf of the Plaintiff, Sally White and her request for the court's assistance resolving issues related to discovery.  I respectfully request that, with the consent of my adversaries, the court accept this letter two days out of time.  My adversaries conditioned their consent on my agreeing to extend their time to respond until 10 days from today.  I apologize to the court for the inconvenience.

 **I.** <u>**The Burdens of Proof under *Grigoletti***</u>

  The Plaintiff seeks a remedy under the New Jersey Law Against Discrimination for gender-discrimination based on the payment of unequal wages for the performance of substantially equal work.  She may prevail either by proving the elements of an Equal Pay Act claim, or under a disparate treatment analysis of NJLAD.  Failure of an EPA claim is not necessarily determinative of the case.  An NJLAD or Title VII violation may still be found on a <u>McDonnell-Douglas</u> disparate impact analysis.  <u>Grigoletti v. Ortho Pharmaceuticals</u>, 118 N.J. 89, 112 (1990), Lindeman and Grossman, "Equal Pay" <u>Employment Discrimination Law</u> at 501 (3d ed. 1997).

  A. <u>The *Prima Facie* Case</u>  Thus, the Plaintiff must prove a *prima facie* case by showing how she was paid less than men with jobs substantially equal to hers (under the EPA), or "substantially similar" (under NJLAD), or (ii) by showing that the male employee who was her successor was paid a substantially higher wage than what she had been paid for performing substantially the same duties.  <u>Dubowsky v. Stern, Lavinthal, Norgaard  Daly</u>, 922 F.Supp. 985 (D.C.N.J. 1996).

Hon. Michael A. Shipp
February 1, 2012
Page 2

  B. The Affirmative Defenses or Non-Discriminatory Reason If the Plaintiff establishes the *prima facie* case, then the Defendants either prove one of the EPA's affirmative defenses, or, under NJLAD, the Defendants articulate a legitimate non-discriminatory reason for the treatment of the Plaintiff.

  C. Pretext The Plaintiff has "the ultimate burden of proof . . . to establish that [her]unequal wages were attributable to discrimination on account of [her] gender" under the McDonnell-Douglas standard. Grigoletti at 114-114. She may overcome the Defendant's explanations by proving that the justification offered by the Defendants is a pretext for discrimination. Dubowsky, supra at 990. Thus, Plaintiff may offer in the pretext phase of the case evidence of (i) the falsity of the Defendants' statements, (ii) direct evidence of discrimination, such as discriminatory statements of the Plaintiff's supervisor (Lindahl v. Air France, 930 F. 2d 1234, 1439 (9th Cir. 1991); (iii) admissions that permit an inference of discriminatory intent, and (iv) comparative evidence of similarly situated individuals, and (iv) statistics.

  D. Allegations of the Amended Complaint Pursuant to the terms of her employment contract, the Plaintiff was an employee of Smiths Group plc assigned to work for Smiths Detection, Inc. (Amended Complaint at ¶ 25, 26). In 2003, the company asked her to start what became a successful global business unit. By 2009, the unit generated $75 million in revenue and $22.2 million profit. The Plaintiff was responsible for overseeing 500+ employees and had responsibility for Profit-and-Loss for the unit.

  She contends that Smiths Group, acting as a joint employer with Smiths Detection, id. at ¶96, violated NJLAD on the basis of disparate treatment/compensation. Id. at 96, 97. She states that her job was substantially equal or substantially similar to those of male employees who ran global businesses and had Profit-and-Loss responsibilities, and especially those who were given the title, "President." Id. at ¶103.

  The Amended Complaint gives examples of four male peers, Id. at ¶¶118-120, and a female executive who also suffered pay inequity. Id. at ¶ 121.

  The Defendants explain the pay differential, saying Plaintiff was not entitled to be compensated at the level of President of Smiths Detection, because:

- she was not a President of Smiths Detection,
- she did not perform duties or have responsibilities similar to a President of Smiths Detection,
- she reported to a President of Smiths Detection for a portion of the potentially relevant period, and
- an independent evaluation of Plaintiff's position confirmed that her compensation was fair and appropriate. (Answer to Interr. No. 7).

Hon. Michael A. Shipp
February 1, 2012
Page 3

## II. The Court is Urged to Compel Disclosure of Relevant Documents and Information

A. **The *Prima Facie* Case:** Defendant Smiths Detection has refused to provide information that is relevant to the *prima facie* case.

  **(1) Substantially equal duties**

  i. Interrogatory No. 14 and Document Request #14 seeks information related to the search conducted by executive recruiting company, Korn/Ferry International for the Plaintiff's successor. While the Plaintiff was still employed, Smiths Detection asked the executive recruiting firm, Korn/Ferry International, to seek a candidate to replace her as Senior VP/Global Service Operations. The salary, benefits, other compensation and description of the job and the requirements for the job are direct *prima facie* evidence. Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F. Supp. 985 (D.C.N.J. 1996) (plaintiff entitled to establish prima facie case by presenting evidence of her successor's salary).

  ii. Plaintiff seeks the Defendants' personnel records for the actual job description, qualifications and compensation paid to her successor, Terry Gibson, in the position, VP/Global Service Operations. Defendants object on the grounds of relevance. But Plaintiff is entitled to the information since it supports her prima facie case. Dubowsky, supra.

  iii. Request No. 15, seeks information concerning the job duties, qualifications and compensation for the job that Plaintiff was ordered to accept in June 2010, Director, Conventional X-Ray. Defendants refuse saying the request is vague and overly burdensome. Plaintiff is entitled to the information since the compensation and job duties of the last job the employer assigned to her is related to her *prima facie* case (evidence of her successor's salary supports her *prima facie* case under Dubowsky, supra), and will reveal the employer's opinion of the Plaintiff's abilities and qualification. Finally, the gender and current compensation of the present incumbent is plainly evidence supporting each stage of the McDonnell-Douglas analysis

  iv. Document Request 18, is a compensation survey that includes the Plaintiff's position, Senior VP/Global Operations. Defendants produced a report marked, "Draft" and state that they "produced all reports prepared by third-party consultants." The Plaintiff requests any and all final versions of the Draft report (SDSW786).

  v. Answer to Interrogatories 3 and 4 which asks for data of employees who perform the same tasks as the Plaintiff, in addition to the four men named in ¶¶118-120 of the Amended Complaint, and specifically the names, gender, title and compensation of employees who, like Plaintiff, have been responsible for global operations or who run global businesses. The parties are still engaged in discussions and this issue is raised, pending completion of those discussions.

Hon. Michael A. Shipp
February 1, 2012
Page 4

    **(2).**    **Unequal Compensation**

    vi. In response to Document Request No 1, Smiths Detection stated that it would present a "summary compilation sufficient to show the total compensation that Defendant paid to [the four male comparators A, B, C and D] for the period August 2, 2008 to December 2010." Smith Detection has not produced that a "summary compilation of total compensation," but only a spreadsheet with salary and bonus. The documents it produced do not show the total compensation paid to the comparators.

    vii. Interrogatory 13 Documents Request No. 2. The Plaintiff asked for names of employees who have agreements by which cash, stock or any emolument accelerates upon a change-in-control, and in particular whether the four comparators named in the pleading or any others had accelerated options or bonuses. Defendants responded, "None of the four alleged comparators had any agreements providing for accelerated benefits upon a change in control of Smiths Detection."

    The Plaintiff is aware, however, that frequently stock option plans include change-in-control triggers, and requested a copy of each stock option-like plan named in the documents produced in discovery. She seeks copies of the 10 plans referred to in discovery (see Item iii, below).

    viii. Document Requests 16 and 20, providing a summary of who received awards of stock options, restricted stock, stock appreciation rights, or any award of real or phantom equity during the period 2008 to December 2010. (By way of background, the Plaintiff's options ended in 2008 and she was told no one was awarded options. She learned that others received options.) Defendant answered that the four male comparators "all received no options under the Smiths Industries 1995 Executive Share Option Scheme." However, discovery has revealed that there are <u>at least eight (8) other stock or option plans, a total of nine listed in the documents produced in discovery</u>.[1] Plaintiff asked Defendants for a copy of each f the plans to see whether there are acceleration-triggers. She also asked for the names of persons who received such awards in 2008, 2009 and 2010. The request is pending.

    ix. Plaintiff sent a written report to her superiors in 2009 complaining of sex discrimination and pay equity. In Request 20, she asks for "any document prepared

---

[1] (a) Smiths Group 2010 Value Sharing Plan; (b)Smiths Group Value Sharing Plan; (c) Smiths Industries 1995 Executive Share Option Scheme; (d) Smiths Industries 1995 Executive Share Option Scheme (Overseas Section); (e)     Smiths Industries 1995 Executive Share Option Scheme UK (Approved Section) (f) Smiths Industries 1995 Executive Share Option Scheme UK (Unapproved Section) (g) Smiths Group Performance Share Plan (EPS); (h)Smiths Group Performance Share Plan (TSR); (i)Smiths Group Co-Investment Plan/Matching.

on behalf of Smiths Detection, Inc., responding to Plaintiff's September 18, 2009 report to Defendant Gane and [HR Director Pennie] Boyko concerning Plaintiff's compensation."

In response, the Defendants state that "all non-privileged documents prepared in response to the Plaintiff's complaint were produced." Plaintiff requests that the court review the privileged documents *in camera* and determine whether the privilege is appropriate.

### B. Defendant's Affirmative Defenses

i. Request Nos. 8 and 12, the Annual Reports, internal audit reports and Profit and Loss statement from 2007 to 2010, and the internal audit report for Warren, NJ. These financial data are vital to prove how Plaintiff's work consistently added more and more revenue to both company's profits and bottom line, far in excess of any male executives who had been elevated to President. The revenue generated by Plaintiff's business unit is a relevant consideration for executive compensation. The reports will show how the Plaintiff's business units compared favorably to the other units in Smiths Detection.

ii. Requests 6 and 7, the minutes of the meeting of the May 2010 Smiths Detection Board meeting. At this meeting, the board would have discussed and approved of the actions that resulted in the Plaintiff's removal from the position of running the Global Service Operation, and where the company's alleged reorganization was discussed. The Defendants assigned the Plaintiff to a new role, allegedly as part of a company-wide reorganization. If the Plaintiff's skills, abilities, background and other qualifications were discussed in that context, the information would be relevant to the Defendants affirmative defense or its consideration of non-discriminatory reasons justifying her compensation.

### C. Pretext Analysis

iii. Interrogatories No. 5 and 6 asks the reasons why Plaintiff's job was changed from Senior VP/Global Services running an international operation supervising more than 500 persons to Director/Conventional X-Ray, with fewer than three and perhaps no direct reports, a job of lower rank than her first job with the company 17 years earlier.

The Plaintiff has the burden of proving discriminatory intent, and at the pretext stage may use contemporaneous statements or actions that reveal sex discrimination. The reason why the company gave the Plaintiff such a severe drop in responsibility and prestige is evidence of discriminatory intent, a key factor in the pretext stage of this NJLAD pay equity case. The Plaintiff has the burden of proving intentional discrimination and this information is direct evidence that is relevant to the pretext.

Hon. Michael A. Shipp
February 1, 2012
Page 6

    iv. Interrogatory No. 18 the results of the company's investigation of the Plaintiff's complaints about her pay inequity and sexual discrimination charges against defendant, Christopher Gane.

    In her letter of resignation, the Plaintiff complained of pay inequity and sex discrimination. The man who decided the Plaintiff's compensation was Defendant, Chief Operating Officer Christopher Gane. Smith Detection's General Counsel told the Plaintiff that her complaints were being investigated, and, after the investigation, Smith Detection fired Mr. Gane. Interrogatory 16 asks about the investigation of her claims, the results of the investigation, the recommended action and what action was taken in response to her complaints. The investigation report (even if prepared by counsel) is relevant and discoverable, Payton v. N.J. Turnpike Authority, 148 N.J. 524 (1997). It is direct evidence of discriminatory intent, for which the Plaintiff has the burden of proof on the pretext phase.

**D.**     **Requests Relevant to All Elements**

i.     Request No. 14 to Smiths Detection asks for all emails to or from Gane, Bark, Boyko or Rizkalla that relate in any way to the Plaintiff. The parties have agreed to a limited production, for the period 2008 to 2010.

ii.     Request Nos. 1 and 2 to Defendant Christopher Gane is for email or other correspondence between Gane and Bark in the period June 2009 to June 2010 that refers to Plaintiff, Sally White; and that refers to the position of manager or Vice President of Global Service Operations. Defendants contend that these email messages are outside of the scope of the actionable claim, since the retaliatory discharge and other claims were dismissed. However, the standard for discovery permits discovery of the email. Plaintiff contends that Mr. Gane's actions related to her are tainted by sex discrimination. Mr. Gane, Mr. Bark and the Plaintiff worked together on a project and the email is likely to disclose Mr. Gane's views of the Plaintiff, her abilities and her work in general. It is likely to lead to admissible evidence.

                                       Respectfully Submitted,
                                       Law Office of Ellen O'Connell, L.L.C.

                                       s/Ellen O'Connell
                    By: _____
                                       Ellen O'Connell

cc:  W. John Lee, Esq.
     Jyotin Hamid, Esq.