# ELLEN O'CONNELL
### ATTORNEY AT LAW

LAW OFFICE OF ELLEN O'CONNELL, LLC
P.O. BOX 132
30 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932-0132
P (973) 295-6800
F (973) 295-6799
_____

August 21, 2012

Hon. Michael A. Hammer
United States District Court
Martin Luther King Jr. Federal Bldg.
50 Walnut Street
Newark, NJ 07101

      Re:    *White v. Smiths Detection, Inc.*
                 Docket No. 2:10-cv-04078-SRC/MAS

Dear Judge Hammer:

This letter is the joint status report from the parties pursuant to Your Honor's August 7, 2012 Order (Dkt. No. 124).

### I.    NATURE OF THE CASE, RELIEF REQUESTED, SUBSTANTIVE ISSUES.

    **A.**    **Plaintiff's Position**

Nature of the Case:  This is an employment discrimination case brought under the New Jersey Law Against Discrimination alleging sex discrimination in the compensation of senior executives. The Plaintiff, Sally White, had been a Senior VP/Global Service Operations of Smiths Detection, a global leader in the manufacture of threat detectors used in airports and public buildings. When a division that the Plaintiff created from a concept of her own design reached global scope, she should have received the same title and compensation of "President" that were given to four male executives of global divisions who performed substantially equal work. She asked for the title and compensation commensurate with the job of a division President. Rather than give her that to which she was entitled, the Defendants demoted her to a position of less authority and diminished responsibility than she had in her first job with the company 17 years earlier.

Discovery recently produced by the Defendants reveals facts hitherto unknown about the details of its compensation and stock grant schemes. On May 18, 2012, within 30 days of learning these newly disclosed facts, the Plaintiff filed a motion to amend her pleadings to add pertinent causes of action that follow from the recently produced discovery. The Second Amended Complaint alleges disparate treatment sex discrimination on the basis of constructive discharge, failure to promote, failure to give stock grants, failure to give severance benefits; and, disparate impact sex discrimination on based upon the eligibility standard that the Defendant adopted for its stock

grant plan (i.e., only "executives" are eligible and fewer than 3% of senior managers are women).

The Plaintiff counsel notes that the Court did not ask for the procedural history provided by the Defendants, below. The arguments they raise are the subject of a motion pending before the Court. If Plaintiff chooses not to engage the uncalled for procedural history here does not mean she agrees with its arguments. This is not the place to argue what has been effectively laid out in Plaintiff's briefs addressing why the Second Amended Complaint should be permitted.

Relief Requested:   Under the pay equity claim presently before the Court, Plaintiff seeks an award equal to a retroactive adjustment of her compensation (salary, bonus, stock options, stock grants, pension credits, severance arrangements, "stay" agreements and other benefits) to the date of discrimination, an award to compensate for unfavorable tax consequences, pain and suffering, counsel fees and costs of suit. Under the proposed Second Amended Complaint, the Plaintiff seeks damages for pay equity, plus damages for wrongful discharge, including reinstatement with back pay, or front pay in lieu of reinstatement, and a declaration that the Smiths Group Co-Investment Plan and the Smiths Detection Divisional Stock Plans are illegal because of their disparate impact on female employees. Finally, under each Count of the current and proposed amended pleading, there are grounds for punitive damages because the allegations show egregious misconduct and the participation of the highest levels of management of these companies.

Substantive Issues:   NJLAD Pay Equity:

(a) After the Defendants removed the Plaintiff from her position, they immediately began efforts to replace her by recruiting for the title, "President, Global Services Operations" for the same duties performed by the Plaintiff in her former position. Whether the Plaintiff performed substantially equal work as the four male Presidents who are her comparators?

(b) Whether the compensation and title disparities are the result of a differential based on any cognizable factor other than sex?

(c) Because the Plaintiff has the burden of proving intentional discrimination under an NJLAD pay equity case, whether the facts concerning statements and behavior of her supervisor, which supported the Plaintiff's sexual harassment claim that was dismissed on the Defendants' R. 12 (b) (6) motions, are relevant as evidence of discriminatory intent.

(d) Whether principles of equity permit a jury to award back pay for a period starting the date when discrimination began?

### B.   Defendants' Position

On August 9, 2010, Ms. White filed the original complaint (Dkt. No. 1) in which she claimed that: (1) she was constructively discharged and/or demoted for raising purported national security concerns in connection with the implementation of SAP software in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq. (Count I); (2) she was paid less than similarly situated male employees in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 et seq. (Count II); (3) she suffered a hostile work environment due to her gender in violation of the NJLAD (Count III); (4) she suffered the tort of

intentional infliction of emotional distress ("IIED") (Count IV); (5) she was entitled to recovery under a quantum meruit theory (Count V); and (6) she was entitled to punitive damages (Count VI).

On September 9, 2010, Defendants moved to dismiss the CEPA claim (among others), arguing, *inter alia*, that it was implausible that Ms. White's complaints about the implementation of SAP software risked national security sufficient to give rise to a CEPA claim. See Memorandum of Law In Support Of Defendants Smiths Detection, Inc.'s, Brian Bark's, and Christopher Gane's Motion to Partially Dismiss the Complaint (Dkt. Nos. 11, 25). By Order and Opinion dated October 22, 2010 (Dkt. Nos. 27, 28), the Court granted, in part, this motion and dismissed with prejudice Ms. White's claims that she was demoted and/or constructively discharged premised upon a CEPA whistleblower theory as well as her IIED and quantum meruit claims. This Court also dismissed Ms. White's NJLAD claims against individual defendants Christopher Gane and Brian Bark, but gave Ms. White leave to amend her complaint to assert aiding and abetting claims under the NJLAD against Messrs. Gane and Bark.

On November 10, 2010, Ms. White filed her First Amended Complaint ("FAC") in which she sought to premise the same constructive discharge and demotion claims that she pled under a CEPA whistleblower theory in the original complaint under several new theories: (1) implied breach of contract; (2) breach of contract; (3) a breach of covenant of good faith and fair dealing; (4) tortious interference with contract; (5) NJLAD disparate treatment; and (6) NJLAD retaliation. She also continued to assert claims for disparate pay and hostile work environment under the NJLAD, and added aiding and abetting claims against the individual defendants.

On December 23, 2010, Defendants once again moved to dismiss all of Ms. White's claims except her disparate pay claim. See Memorandum of Law in Support of Motion to Partially Dismiss The Amended Complaint of Smiths Detection, Inc. et al (Dkt. No. 44-1); Memorandum of Law of Smiths Group, plc in Support of Motion to Dismiss The First Amended Complaint (Dkt. No. 40). On April 4, 2011, the Court again dismissed all of Ms. White's claims save for her disparate pay claim (and derivative aiding and abetting claims) and dismissed Smiths Group, plc and Philip Bowman as defendants. See April 4, 2011 Order and Opinion (Dkt. Nos. 64-65).

On May 2, 2011, Ms. White filed a motion for reconsideration of the Court's decision to dismiss her constructive discharge and demotion claims as pled in the FAC. Pl. Motion for Reconsideration (Dkt. No. 69-1). Ms. White argued that there were new facts that supported these claims, such as her allegations that: (1) Smiths Detection had begun searching for a candidate to replace Ms. White a month before she was notified of her new position in the reorganization, and (2) Smiths Detection conducted an investigation after receiving Ms. White's resignation letter and, as a result of this investigation, Mr. Gane was terminated. Id. at 2-3. Plaintiff also filed two letters with this Court to further support her motion for reconsideration, as well as reply brief that was not permitted by local rule. See May 11, 2011 Letter from E. O'Connell (Dkt. No. 71); May 12, 2011 Letter from E. O'Connell (Dkt. No. 73); Pl. Reply Brief (Dkt. No. 76); June 1, 2011 Letter from E. O'Connell (Dkt. No. 78). In these supplemental filings, Ms. White argued that there were additional new facts that supported these claims, such as her allegation that she was, in fact, replaced by a man after her employment ended (Dkt. No. 73 at 2).

The Court considered Ms. White's motion for reconsideration, including the supplemental letters and reply brief, and found that Plaintiff still failed to assert constructive discharge or demotion claims.  June 7, 2011 Opinion (Dkt. No. 80) at 4-5.  The Court further held that, even if Ms. White had alleged facts sufficient to state a constructive discharge claim, she had no damages as she received pay during her six month notice period and was offered (but refused) her prior Vice President of GSO position.  Id. at 5 (citing April 15, 2011 Opinion at 6).

Currently, the sole remaining claim in this matter is Ms. White's disparate pay claim (along with the derivative aiding and abetting claims premised on the disparate pay claim).  The crux of Ms. White's disparate pay claim is her belief that, when her responsibility as Vice President of Service Operations for Smiths Detection, Inc. changed from just North America to a more globally oriented role, she should have been a President and paid commensurate with four male employees of Smiths Detection, Inc. who had President titles.  Smiths Detection denies that Ms. White's disparate pay claim has any merit.  For instance, Ms. White cannot establish a prima facie claim that she performed substantially equal work to her alleged comparators, and even if she could, Smiths Detection paid these male employees more based on "factors other than sex."  Defendants also deny that Plaintiff is entitled to any of the relief that she seeks.

As described below in Section III, currently pending before the Court is Plaintiffs' motion for leave to amend the FAC.

## II.     FACT DISCOVERY

### A.     Close of Discovery

1.     **Plaintiff's Position**:  The date when fact discovery closes is still to be determined.  Under the Pretrial Scheduling Order (Dkt. No. 84), fact discovery was to have closed March 6, 2012.  However, on February 1, 2012, Plaintiff filed a motion to compel discovery and that motion is still pending.  Plaintiff understands that the court intended to set new deadlines after the decision on the discovery motion, the motion to amend pleadings and the mediation which occurred in March 2012.

2.     **Defendant's Position**.  The current Scheduling Order in this matter provides that all fact discovery was to be completed by March 6, 2012 (see Dkt. No. 84), but the Court extended the deadline for fact discovery until May 7, 2012 (see Dkt. No. 103).  The Court then extended the close of discovery for an additional two weeks to allow the parties to engage in mediation.  March 21, 2012 Order (Dkt. No. 106).

The parties participated in mediation with retired Judge John Bissell on March 30, 2012, which ultimately was not fruitful.  See March 21, 2012 letter from E. O'Connell (Dkt. No. 105).  After mediation, Plaintiff requested that the Court further extend the discovery cutoff period as she intended to file a motion for leave to amend the FAC.  Dkt. No. 107.  After conferring with the parties on May 4, 2012, the Court issued an Order that day setting forth a briefing schedule on the motion for leave to amend the FAC.  Dkt. No. 109.

Hon. Michael A. Hammer
August 21, 2012
Page 5

      **B.**      **Remaining Discovery and Time for Completion**

      1.    **Plaintiff's Position**   All discovery issues remain open for the Plaintiff. The time for the parties to complete fact discovery will be six months from the date the Court decides the motion to amend the complaint.

    Paper Discovery.  Plaintiff's original document demands and interrogatories addressed the issues raised in the pay equity case and many of the claims that are raised in the proposed Second Amended Complaint.  However, the Defendants objected to most of those requests.

    Deposition Discovery.  Defendants have refused to produce any witness for depositions while the discovery and pleading amendment motions have been pending.  On the Pay Equity case, Plaintiff will take seven depositions, consisting of five defendants' witnesses (Boyko, Phipson, Gane, Falcone and Gordon-Pugh); one witness from of Korn Ferry International, the executive recruiter that recruited for the position of "president" after Plaintiff left her job, and a witness from the human resources consulting firm, Mercer, whose report on pay equity for executive titles, including the Plaintiff's, was produced by Defendants in discovery.  On the claims presented in the proposed Second Amended Complaint, in addition to these seven depositions, Plaintiff may need to depose representatives of Smiths Detection who adopted the stock grant plans' eligibility standard.  Obviously if the depositions reveal others who should be questioned, the Plaintiff would like to reserve the right to petition the court for further relief.

      2.    **Defendants' Position**

The parties commenced discovery in September 2011.  Discovery has been contentious. Defendants believe that Plaintiff has sought discovery regarding the demotion, constructive discharge, and sexual harassment claims that the Court dismissed with prejudice.  See, e.g., February 14, 2012 Letter from S. Bouchard (Dkt. No. 98); February 1, 2012 Letter from E. O'Connell (Dkt. No. 96).  The parties' discovery disputes are currently pending before the Court pursuant to informal motions to compel discovery submitted via joint letters as described below in Section III.

Defendants believe that discovery is substantially complete as to the sole remaining claim in this lawsuit, Ms. White's disparate pay claim.  The parties have exchanged written discovery responses and Defendants have produced over 30,000 pages of documents including the personnel files, performance evaluations, compensation histories, any reports prepared by third-party consultants for Plaintiff and the four alleged pay comparators named in the FAC, as well as the stock plans applicable to Plaintiff or the four alleged comparators.  Defendants have also produced hundreds of emails that Chris Gane, Pennie Boyko, Robin Falcone, and Stephen Phipson (among others) sent to or from Sally White or that contain the terms "Sally" or "White" since 2007.  Defendants took Ms. White's deposition on March 9, 2012.

Plaintiff has noticed the depositions of individual defendants Chris Gane, Pennie Boyko, and Stephen Phipson, as well as Robin Falcone, a Smiths Detection human resources employee.

The time to complete any remaining discovery depends on the outcome of Plaintiff's motion for leave to amend the FAC and motion to compel.

Hon. Michael A. Hammer
August 21, 2012
Page 6

### III.  EXPERT DISCOVERY

#### A.  Plaintiffs' Position.

The date when expert discovery closes is still to be determined.

As for the pay equity claim, the Plaintiff requires discovery regarding the Defendants' reasons for paying the four male comparators more than she.

#### B.  Defendants' Position.

The current Scheduling Order in this matter provides that expert discovery was to be conducted by June 7, 2012 (see Dkt. No. 84).  If the Court extends the period for the parties to conduct expert discovery, the scope of such discovery will depend upon the outcome of the Plaintiff's motion for leave to amend as well any expert(s) designated by the Plaintiff.

### IV.  MOTIONS

#### A.  Pending Motions

On February 1, 2012, Plaintiff filed an informal motion to compel which has not yet been decided.  See February 1, 2012 Letter from E. O'Connell (Dkt. No. 96); March 2, 2012 letter from E. O'Connell (Dkt. No. 102); February 14, 2012 Letter from S. Bouchard (Dkt. No. 98); March 2, 2012 Letter from W. Lee (Dkt. No. 101).  This motion has been fully briefed and is ready for disposition.  During a status conference with the parties, Judge Shipp indicated that the Court would wait to rule on the parties' discovery disputes until after it decided the Plaintiff's motion for leave to amend, as some of the discovery issues may turn on whether Plaintiff's motion was successful.

On May 18, 2012, with leave of court, the Plaintiff filed a motion for leave to amend her complaint. (Dkt. No. 110).  The motion is now fully briefed and is awaiting disposition.

Plaintiff's position is that the new pleading is based on facts that Plaintiff discovered by subpoenaing third-parties and from documents produced by the Defendants and received fewer than 30 days before she filed the pending motion.  The claims have merit and there will be no prejudice to the Defendants if the motion is granted because they have refused to produce any discovery other than information related to the pay equity case.

Defendants' position is that the motion for leave to amend has no merit.  Thus, Defendants opposed the motion for leave on a variety of grounds, such as the law of the case doctrine (as Defendants contend that Plaintiff sought to add the *same* constructive discharge, demotion, and sexual harassment claims that the Court previously dismissed with prejudice), that Plaintiff failed to demonstrate good cause for the amendment as required by Rule 16, and that the proposed amendments would be futile, unduly prejudice Defendants, and cause undue delay.  Defs. Brief in Opposition to Pls. Motion for Leave to File Second Amended Compl. (Dkt. No. 114).

Hon. Michael A. Hammer
August 21, 2012
Page 7

### B. Plaintiff's Anticipated Dispositive Motions

It is premature to determine whether the Plaintiff will file dispositive motions insofar as no depositions have occurred, and there has been little discovery concerning the reasons why the Defendants refused to pay the Plaintiff commensurate with the male Presidents.

### C. Defendants' Anticipated Dispositive Motions

Defendants anticipate filing a motion for summary judgment, but the scope of such a dispositive motion will depend on the outcome of the pending motion for leave to amend the FAC and subsequent discovery. If the Court denies Plaintiff's motion for leave to amend the FAC, and depending on facts developed during any subsequent discovery (such as forthcoming depositions of the defense witnesses), Defendants anticipate moving for summary judgment on the only claim that is currently extant (Plaintiff's disparate pay under the NJLAD and derivative aiding and abetting claims) on several grounds including that Ms. White did not perform substantially similar work to the four alleged comparators and also because any difference in pay was due to legitimate factors other than sex.

## V. POTENTIAL SETTLEMENT CONFERENCE

### A. Plaintiff's Position

The parties engaged in mediation with Hon. John Bissell on March 30, 2012. After the mediation was unsuccessful, the parties received leave of court to hold the case in abeyance for an additional two weeks to engage in further settlement discussions. The effort was unsuccessful and revealed that the parties will not likely settle their dispute. The Plaintiff does not believe that further settlement conferences with the court or Judge Bissell will be beneficial at this time.

### B. Defendants' Position

As noted above, the parties engaged in mediation before retired Judge John Bissell on March 30, 2012, which was not successful. Although Defendants believe that additional settlement efforts including another mediation with Judge Bissell or a conference with the Court could potentially resolve this matter, they do not believe that such efforts will be fruitful until Plaintiff's motion for leave to amend the FAC is resolved.

<mark>Case 2:10-cv-04078-KM-MAH   Document 128   Filed 08/21/12   Page 8 of 8 PageID: 1014</mark>

Hon. Michael A. Hammer
August 21, 2012
Page 8

Dated: August 21, 2011

          Respectfully Submitted,
          Law Office of Ellen O'Connell, L.L.C.
          By: _____s/Ellen O'Connell_____

MORGAN LEWIS & BOCKIUS, LLP

By: _____s/Sarah E. Bouchard\_\_\_\_\_
      Sarah E. Bouchard
*Attorneys for Defendants Smiths Detection, Inc., Stephen Phipson, Pennie Boyko, and Christopher Gane*

DEBEVOISE & PLIMPTON, LLP

By:_____s/Jyotin Hamid_____
      Jyotin Hamid
*Attorneys for Defendant Smiths Group, PLC*