<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| **SALLY WHITE,** | : |  |
|  | : |  |
| **Plaintiff,** | : | **Civil Action No. 10-4078 (KM)** |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **SMITHS DETECTION, INC., ET AL.,** | : | **OPINION** |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

---

This matter comes before the Court by way of plaintiff Sally White's ("plaintiff") motion for leave to file a Second Amended Complaint.  (Mot. to File Second Am. Compl., Oct. 5, 2012, ECF No. 135).  Pursuant to Federal Rule of Civil Procedure 78, the Undersigned did not hear oral argument.  For the reasons set forth below, plaintiff's motion for leave to file a Second Amended Complaint is granted in part and denied in part.

## I.   FACTUAL BACKGROUND

For purposes of a motion to amend, the Court must accept as true all well pleaded allegations in the proposed amended complaint.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009).

In 1993, plaintiff was hired by defendant Smiths Group, LLC, f/k/a Smiths Industries, PLC ("defendant Smiths Group").  (Second Am. Compl., Oct. 5, 2012, ECF No. 137-1 ¶¶ 21, 32).  By 1997, she was a Vice President.  (<u>Id.</u> ¶ 21).  In 2001, plaintiff was transferred to defendant Smiths Group's U.S.-based subsidiary, defendant Smiths Detection, Inc. ("defendant SDI"), which comprised detection technology companies acquired by defendant Smiths Group.

(Id. ¶¶ 21, 36).  The next year, defendant Smiths Group and plaintiff modified her employment contract, requiring either party to provide six months' notice of termination or resignation.  (Id. ¶¶ 32, 36).  In 2003, plaintiff successfully pitched the idea to start an independent line of business called "SDI Service Operations for the Americas," which serviced and repaired SDI's equipment.  (Id. ¶¶ 37–38).  Defendant SDI developed that independent business line into a global operation.  (Id. ¶ 39).  In 2003, plaintiff was promoted to Vice President of Service Operations, but she received no increase in salary or bonus to accompany the promotion.  (Id. ¶ 71).  She was subsequently promoted to Vice President of Global Service Operations ("GSO"), but again received no concomitant increase in salary or bonus.  (Id.).

From 2003 to 2009, plaintiff's business unit produced increasing annual profit and revenue, which totaled $110 million by 2010.  (Id. ¶¶ 89, 91).  Plaintiff alleges that despite that performance, comparable male colleagues who ran similar global units held the title of President and were more highly compensated than plaintiff.  (Id. ¶¶ 23, 86).  For instance, plaintiff alleges that in 2008, her total compensation for the year was $272,325, while that of her male peers ranged from $326,538 to $681,108.  (Id. ¶ 86).  In addition, plaintiff alleges that Smiths Group's Remuneration Committee invited her male counterparts, but not plaintiff, to participate in "secret stock plans."  (Id. ¶¶ 23, 71, 100–03).  She received reductions in overall compensation in both 2009 and 2010.  (Id. ¶¶ 90, 94).  Further, plaintiff alleges that men held ninety-one of SDI's ninety-four senior management positions, and that she was the only woman to run a business unit.  (Id. ¶¶ 20, 115–16).

In February 2009, defendant Smiths Group hired Christopher Gane ("defendant Gane"), plaintiff's direct supervisor, as SDI's Chief Operating Officer.  (Id. ¶¶ 51–52, 72).  The

2

Complaint alleges that defendant Gane repeatedly made obscene, derogatory, or vulgar remarks to or about plaintiff and other female employees.  (See, e.g., id. ¶¶ 51, 54–55, 57, 59).  For example, plaintiff alleges that in April 2009, she asked defendant Gane how late he was staying in the office, and he replied, "I would never think about going to bed without you."  (Id. ¶ 54).  In August 2009, plaintiff provided defendant Gane evidence of the pay and title inequity she allegedly endured and requested he promote her to President.  However, plaintiff alleges, defendant Gane and Pennie Boyko ("defendant Boyko"), a Human Resources vice president, ignored plaintiff's request.  (Id. ¶¶ 73–74).

Plaintiff alleges that in April 2010, defendants Gane and Boyko reached out to an executive recruiter to recruit for the position of "President, Services."  (Id. ¶ 75).  They provided plaintiff's current job description for "Vice President/Global Service Operations" to the recruiter for this purpose.  (Id. ¶¶ 75, 121).

As part of an allegedly pretextual reorganization (see id. ¶¶ 119, 131), defendant Gane told plaintiff on June 1, 2010, that: (i) she was to be demoted from her position as Vice President; (ii) she would no longer be a member of defendant SDI's senior management; and (iii) her compensation and responsibilities were to be reduced.  (Id. ¶¶ 120, 125).  Plaintiff alleges that Stephen Phipson ("defendant Phipson"), a member of defendant SDI's Board of Directors, approved the demotion.  (Id. ¶ 160(B)).  Plaintiff alleges that despite her superior performance results during her seventeen years as an employee of defendant Smiths Group, defendant Gane told plaintiff she would be "separated from the company" if she refused the demotion.  (Id. ¶¶ 41, 134).

Plaintiff resigned the next day and provided the requisite six months' notice.  (Id. ¶ 136).

She was instructed not to return to work for the duration of those six months.  (Id. ¶ 137).

Defendant Gane served as plaintiff's replacement after her resignation.  (Id. ¶ 78).  Plaintiff

alleges that Gane was terminated with cause, following plaintiff's resignation and as a direct

consequence of an investigation into plaintiff's prior complaints of sexual discrimination.  (Id. ¶¶

139, 144).

Plaintiff alleges that defendants Smiths Group and SDI violated the New Jersey Law

Against Discrimination ("NJLAD") through failure to promote on the basis of gender (id. ¶¶

77–79); gender-based pay inequity (id. ¶¶ 82–86); discrimination on the basis of gender (id. ¶¶

101–03); disparate impact on women (id. ¶¶ 109–12, 115–17); adverse employment actions

because plaintiff is a woman (id. ¶¶ 125–31, 147–48); and constructive discharge (id. ¶¶

134–36).  Plaintiff also asserts claims on the theory of aiding and abetting said violations of the

NJLAD against individual defendants Phipson (id. ¶¶ 253–57), Gane (id. ¶¶ 158–60), and Boyko

(id. ¶¶ 161–63).

## II.    PROCEDURAL HISTORY

On August 9, 2010, plaintiff filed a six-count complaint against defendants Smiths

Group, SDI, Phipson, Gane, Boyko, Philip Bowman ("defendant Bowman"), and Brian Bark

("defendant Bark"), alleging retaliatory discharge in violation of New Jersey's Conscientious

Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA") (Count 1), gender discrimination in

violation of the NJLAD (Counts 2 and 3), intentional infliction of emotional distress (Count 4),

quantum meruit (Count 5), and for punitive damages (Count 6).  (See Compl., Aug. 9, 2010, ECF

No. 1).

4

On September 2, 2010, defendants SDI and Bark filed a motion to partially dismiss the complaint with prejudice.  (See Mot. to Partially Dismiss Compl., Sept. 2, 2010, ECF No. 11). They argued that plaintiff failed to state a plausible claim for relief under CEPA (Count 1), and her claims for intentional infliction of emotional distress (Count 4), quantum meruit (Count 5), and punitive damages (Count 6) failed to state a plausible claim for relief and were preempted by the NJLAD.  (Mem. of Law in Supp. of Defs.' SDI's and Bark's Mot. to Partially Dismiss Compl., Sept. 2, 2010, ECF No. 11-1, at 5–6, 15–19).  Further, defendants SDI and Bark argued that the Court should dismiss plaintiff's claims for disparate pay (Count 2) and hostile work environment (Count 3) as against defendant Bark because defendant Bark was not plaintiff's employer or supervisor, plaintiff identified him as a "principal violator" in a conclusory fashion only, and plaintiff failed to state facts plausibly supporting an "aiding and abetting" claim, which she failed to plead altogether.  (Id. at 19–22).  Defendant Gane joined the motion to dismiss on October 19, 2010. (Joinder of Mot. to Dismiss, Oct. 19, 2010, ECF No. 25).

On October 22, 2010, the Court granted in part and denied in part the motions to dismiss (ECF Nos. 11, 25).  (Order, Oct. 22, 2010, ECF No. 28).  Specifically, the Court ordered the following:

1.    the claim for punitive damages (Count 6) withstood the motion to dismiss;

2.    the claims for sex discrimination (Count 1), intentional infliction of emotional distress (Count 4), and quantum meruit (Count 5) were dismissed with prejudice as to defendants SDI, Gane, and Bark; and

3.    the claims for sex discrimination in violation of the NJLAD (Counts 2 and 3) were dismissed without prejudice as to defendants Gane and Bark.

(Order, ECF No. 28, at 1–2; see Op., Oct. 22, 2010, ECF No. 27).

The Court granted plaintiff leave to file an Amended Complaint with regard to Counts 2 and 3 as to defendants Gane and Bark.  (Order, ECF No. 28, at 2).  On October 25, 2010, defendants Smiths Group and Bowman filed a motion to dismiss the complaint with prejudice. (Mot. to Dismiss Compl., Oct. 25, 2010, ECF No. 30).  They argued that the Court lacked personal jurisdiction over defendant Bowman.  (Mem. of Law in Supp. of Mot. to Dismiss, Oct. 25, 2010, ECF No. 30-1, at 10–12).  Moreover, defendants Smiths Group and Bowman contended that even if the Court did have personal jurisdiction, plaintiff failed to allege or support a plausible claim against defendant Bowman for aiding and abetting under the NJLAD or under a theory of secondary liability (id. at 15–17), and failed to plausibly allege that defendant Smiths Group was liable under a theory of employer liability, through piercing the corporate veil, or by way of the "integrated enterprise" test.  (Id. at 18–23).

On November 10, 2010, pursuant to the Court's October 22, 2010 Order (ECF No. 28), plaintiff timely filed an Amended Complaint against all defendants alleging breach of contract (Counts 1 and 2), breach of fiduciary duties (Count 3), gender discrimination under the NJLAD (Counts 4, 5, and 6), retaliation in violation of the NJLAD (Count 7), sexual harassment in violation of the NJLAD (Count 8), negligence in violation of the NJLAD (Count 9), individual liability under the NJLAD (Counts 10, 11, 12, and 13), tortious interference with contract (Count 14), and punitive damages (Count 15).  (See First Am. Compl., Nov. 10, 2010, ECF No. 34).

On December 23, 2010, defendants filed three separate motions to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  (See Mot. to Dismiss First Am. Compl. with Prejudice by Def. Smiths Group, Dec. 23, 2010, ECF No. 39; Mot. to Dismiss First Am. Compl. with Prejudice by Def. Bowman, Dec. 23, 2010, ECF No. 41(alleging lack of

personal jurisdiction as well); Mot. to Dismiss First Am. Compl. with Prejudice by Defs. Bark, Boyko, Gane, Phipson, and SDI, Dec. 23, 2010, ECF No. 44).

On April 15, 2011, the Court issued an Opinion finding that plaintiff had failed to state claims for: (i) breach of contract and implied breach of contract (Counts 1 and 2); (ii) constructive discharge (Count 6) (id. at 5); (iii) breach of fiduciary duties (Count 3) (id. at 6); (iv) tortious interference with contract (Count 14) (id. at 7); (v) disparate treatment as a form of gender discrimination in violation of the NLAD (Counts 5 and 6) (id. at 7–8); (vi) retaliation in violation of the NJLAD (Count 7) (id. at 8); (vii) hostile work environment under the NJLAD (Count 8) (id. at 9–10); and (viii) negligence for failure to prevent sexual harassment (Count 9) (id. at 9–10). The Court made no ruling as to Count 4, unequal compensation as a form of gender discrimination under the NJLAD, because no defendant had moved to dismiss that claim. (Id. at 10). The Court also found that plaintiff had failed to sustain most of her allegations of individual liability (Counts 10, 11, 12, and 13). However, the Court made no ruling with respect to whether plaintiff sufficiently supported those claims for individual liability stemming from unequal compensation (Count 4) (id. at 10). Finally, the Court found that plaintiff failed to meet her burden of establishing that the Court had personal jurisdiction over defendant Bowman. (Id. at 10–11). Thus, the Court dismissed all counts against defendant Bowman and granted the remainder of defendants' motion to dismiss, with the exception of plaintiff's claim for unequal pay (Count 4) and any claim of individual liability stemming therefrom. (Order, Apr. 18, 2011, ECF No. 65, at 2).

On May 2, 2011, plaintiff filed a motion for reconsideration under Local Civil Rule 7.1 (Mot. for Recons., May 2, 2011, ECF No. 69). She also sought leave to amend her complaint in

a letter filed May 2, 2011.  (See Supp. Mot. for Recons., May 2, 2011, ECF No. 71).  On June 6,

2011, the Court denied plaintiff's motion for reconsideration and her informal request to amend

the complaint.  (Am. Order, June 6, 2011, ECF No. 81).  The Court echoed its April 15, 2011

Opinion in finding no cause of action for breach of express or implied contract.  (Op., June 6,

2011, ECF No. 80, at 2–3).  The Court determined that plaintiff failed to meet the pleading

standards for disparate treatment, and, moreover, could not claim discriminatory demotion

because she had been offered her job back after she resigned, and she declined the offer.  (Counts

5 and 6).  (Id. at 4–5).  Likewise, the Court found that plaintiff's retaliation claim (Count 7)

failed to plead sufficient facts, and she failed to demonstrate that the alleged sexual harassment

was severe or pervasive enough to uphold a claim for sexual harassment (Count 9).  (Id. at 5–6).

The Court reminded plaintiff that she need not move for reinstatement of Count 4 because it was

never dismissed (id. at 4) and denied her request to amend the complaint.  (Id. at 1 n.1).

On June 29, 2011, the Court, noting the consent of all parties, ordered the matter referred

to mediation pursuant to Local Civil Rule 301.1, adjourned the scheduling conference set

previously for July 14, 2011 (see Order, ECF No. 67), and rescheduled it for September 6, 2011.

(Order, June 29, 2011, ECF No. 83).  The Court ordered the parties to advise it of the outcome of

mediation by August 26, 2011.  (Id.).

On September 8, 2011, the Court issued a Pretrial Scheduling Order that required the

parties to file motions to add new parties or amend pleadings no later than January 6, 2012.

(Pretr. Sched. Order, Sept. 8, 2011, ECF No. 84, ¶ 14).  Subsequently, the Court amended the

Scheduling Order to require that any motion to amend the complaint must be filed by May 18,

2012.  (Am. Sched. Order, May 4, 2012, ECF No. 109).  On May 18, 2012, plaintiff filed a

motion for leave to file a Second Amended Complaint (Mot., ECF No. 113), which the Court terminated without prejudice on August 28, 2012.  (Order, ECF No. 129, at 7).  Specifically, the Court found that plaintiff's proposed Second Amended Complaint violated Federal Rule of Civil Procedure 10(b) and that it was necessary for plaintiff "to clarify her proposed pleading as well as her assertions of newly discovered evidence."  (Id. at 4).  The Court further ordered that plaintiff had to refile her motion for leave to file a Second Amended Complaint by September 21, 2012, and that the Second Amended Complaint "shall contain a proposed pleading that clearly identifies the claims that she asserts."  (Id. at 7).  Upon informal application by plaintiff, the Court extended the deadline to file the amended pleading to October 5, 2012.  (Order, Sept. 26, 2012, ECF No. 134).  On October 5, 2012, plaintiff filed the instant application for leave to file a Second Amended Complaint.  (Second Am. Compl., ECF No. 137-1).

III.   PARTIES' ARGUMENTS

A.   PLAINTIFF'S PROPOSED NEW CLAIMS ALLEGING DISPARATE TREATMENT AND DISPARATE IMPACT DISCRIMINATION ON THE BASIS OF GENDER UNDER THE NJLAD

The proposed Second Amended Complaint pleads five new claims – Counts 1, 3, 4, 5, and 7 – alleging disparate treatment and disparate impact discrimination on the basis of gender under the NJLAD.  (Pl. Br. in Supp. Mot. for Leave to File Second Am. Compl. ["Pl. Br."], Oct. 5, 2012, ECF No. 137, at 6).  Plaintiff contends each new claim is based on evidence that she obtained after the Court granted in part and denied in part defendants' motions to dismiss plaintiff's first amended complaint.  (See Pl. Br. at 8; Op. and Order, Apr. 18, 2011, ECF Nos. 64, 65).  Therefore, plaintiff seeks leave to amend her complaint to include the following new claims.

9

*Count 1: Violation of NJLAD – Failure to Promote Because of Gender*

Plaintiff argues that in the proposed Second Amended Complaint, she has now pleaded each element of a prima facie claim for violation of the NJLAD in the form of failure to promote on the basis of gender (Count 1): (1) plaintiff is a woman, (2) she was qualified to possess the title of President, (3) she requested the title of President, and (4) others with similar or lesser qualifications were promoted to the position of President.  (Pl. Br. at 7; see Second Am. Compl. ¶¶ 61–79, ECF No. 137-1).  She claims that defendants Gane and Boyko asked KornFerry, an executive recruiting firm, to recruit a replacement for plaintiff, supplied KornFerry with plaintiff's job description, and indicated that the replacement would possess the title "President." (Pl. Br. at 5–7).  Thus, she asserts that defendants sought candidates for the position of President of GSO, and they did not consider promoting plaintiff to that position because of her gender.  (Id. at 7 (claiming evidence was obtained on February 24, 2012 in KornFerry's response to subpoena after defendant SDI failed to disclose it upon prior request)).

Defendants counter that plaintiff fails to state a prima facie claim for disparate treatment in the form of gender-based failure to promote because defendants did not hire anyone for the role of President of GSO.  (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Leave ["Defs.' Br."], Oct. 22, 2012, ECF No. 138, at 19–20).  Rather, defendants hired Terry Gibson as Vice President of GSO six months after plaintiff resigned.  (Id. at 20).  Defendants submit that they offered plaintiff her job back after she resigned, and she declined the offer.  (Id.).  In addition, defendants urge the Court to deny plaintiff leave to amend the complaint to include Count 1 because plaintiff cannot establish good cause under Federal Rule of Civil Procedure 16.  (Id. at 13–15). Specifically, defendants contend that plaintiff had sufficient information to plead the failure to

promote claim by November 2010, or at the latest, by May 2011, which, defendants assert, is prior to the expiration of the Court's deadline to amend the complaint.  (Id.).

*Count 3: Violation of NJLAD – Discriminatory Stock Awards*

The proposed Second Amended Complaint also seeks to add a new claim for disparate treatment in the form of discriminatory stock awards granted on the basis of gender (Count 3). (See Second Am. Compl. ¶¶ 92–107, ECF No. 137-1).  Plaintiff alleges that in 2007, defendants ceased awarding stock options and instead adopted stock purchase and grant plans for which "Executives" were eligible to participate.  (Id. ¶ 98).  Plaintiff claims that the SDI's Remuneration Committee, in its discretion, invited male employees similarly situated to plaintiff to participate in these plans, but failed to invite plaintiff.  (Id. ¶¶ 100–02).  Plaintiff contends she was not invited to participate in the stock plans because of her gender.  (Id. ¶¶ 102–03).  Plaintiff alleges that such gender-based exclusion caused her to suffer monetary, emotional, and physical harm.  (Id. ¶ 106).

Defendants counter that plaintiff has not stated a prima facie claim for disparate treatment in the form of discriminatory stock awards because she cannot establish injury.  (Defs.' Br. at 22, ECF No. 138).  That is, defendants assert that because plaintiff was eligible for the stock plans in her "executive" position of Vice President of GSO, any damages she may allege that stem from the alleged discriminatory stock awards should be sought as part of Count 2, her pending pay inequity claim, see infra.  (Id.).  In addition, defendants argue that the Court should deny plaintiff leave to amend the complaint to include Count 3 because plaintiff cannot establish good cause under Rule 16.  (Id. at 13–15).  Specifically, defendants contend that plaintiff had sufficient information to state a claim for discriminatory stock awards by November 2010, or at the latest,

by May 2011, which, defendants assert, is prior to the expiration of the Court's deadline to amend the complaint.  (Id.).

*Count 4: Violation of NJLAD – Disparate Impact Discrimination in Stock Plans*

The proposed Second Amended Complaint also seeks to add a new claim for disparate impact discrimination on the basis of gender with respect to the eligibility standards of defendants' stock plans (Count 4).  (See Second Am. Compl. ¶¶ 108–117, ECF No. 137-1). Plaintiff asserts that defendants enforce the policy or practice that only "Executives" are eligible for stock grant and purchase schemes, which is a "lucrative employee benefit."  (Pl. Br. at 8 (claiming evidence of the eligibility criterion was obtained on March 5, 2012 in document production by defendants)).  Plaintiff points out that of the ninety-four Senior Managers employed by SDI, three are women.[1]  (Id. (claiming evidence was obtained on March 5, 2012 in document production by defendants)).  She argues that "Executive" is a facially neutral criterion that nonetheless necessitates a statistically certain disparate impact on women, 95% of whom are not stock-plan participants.  (Id.).  Plaintiff adds that had she accepted the alleged demotion, she would have been ineligible for the stock grant plans.  (Id. at 8–9).

In response, defendants contend that plaintiff fails to state a prima facie claim for disparate impact discrimination on the basis of gender because she fails to identify a neutral policy or practice that is responsible for the alleged disparate impact.  (Defs.' Br. at 21, ECF No. 138).  Defendants argue that plaintiff fails to explain the causal relationship between the eligibility criterion and the imbalance between men and women who hold executive-level

---

[1] Plaintiff appears to assume that "Senior Management" is coterminous with "Executives," or alternatively, that the titles are in fact synonymous.  Defendants do not appear to rebut this assumption.

positions.  (Id.).  In addition, defendants urge the Court to deny plaintiff leave to amend the

complaint to include Count 4 because plaintiff cannot establish good cause under Rule 16.  (Id. at

13–15).  That is, defendants assert that plaintiff had sufficient information to state a claim for

disparate impact discrimination regarding defendants' stock plans by November 2010, or at the

latest, by May 2011, which, defendants assert, is prior to the expiration of the Court's deadline to

amend the complaint.  (Id.).

*Count 5: Violation of NJLAD – Adverse Employment Action Removal from Office of Vice
President, Global Service Operations*

Plaintiff argues that she has pleaded a prima facie claim for disparate treatment in the

form of removal from office constituting an adverse employment action under the NJLAD

(Count 5).  (Pl. Br. at 7, ECF No. 137; see Second Am. Compl. ¶¶ 118–131, ECF No. 137-1).

She claims to remedy the pleading deficiency that the Court noted in her first amended complaint

by pleading that defendant Gane in fact replaced her in her former position.[2]  (Id. (claiming

evidence was obtained on March 5, 2012 in organizational charts produced by defendants)).

Plaintiff contends the new evidence supports the fact that defendants sought a replacement for

her after she resigned, which satisfies the fourth prong of the McDonnell-Douglas framework.

(Id.).

---

[2] Although plaintiff characterizes Count 5 – removal from office – as a new claim, she also
argues that Count 5 remedies a pleading deficiency identified previously by the Court when it
dismissed plaintiff's discriminatory demotion claim.  (See Op. at 7–8 and Order, Apr. 15, 2011,
ECF Nos. 64, 65).  As such, Count 5 would, as defendants assert, constitute a renewed
discriminatory demotion claim, rather than a new removal claim.  The Court includes Count 5
among plaintiff's alleged new claims solely for purposes of organization within the Parties'
Arguments section of this Opinion.  The Court will address later, see infra, whether Count 5 is a
new removal claim or a renewed claim for discriminatory demotion that plaintiff merely re-labels
as a removal claim.

Defendants rebut this argument on several fronts.  First, defendants assert that plaintiff's "removal from office" claim (Count 5) is not a new claim, but merely a re-labeled and renewed version of her previously-dismissed discriminatory demotion claim.  (Defs.' Br. at 9, ECF No. 138; see First Am. Compl. ¶¶ 123–52, Nov. 10, 2010, ECF No. 34).  Accordingly, defendants argue that the law-of-the-case doctrine bars plaintiff from amending her complaint to plead Count 5 because the Court dismissed that claim with prejudice – when plaintiff had called it a "discriminatory demotion" claim – and denied plaintiff's motion for reconsideration on same.  (Defs.' Br. at 11).  Although plaintiff asserts that she may bring the removal claim based on newly-discovered evidence, defendants contend that the purported new evidence does not differ materially from the evidence set forth in support of the previously-dismissed claim.  (Id. at 12 (citing First Am. Compl. ¶ 139)).  For instance, defendants insist that the Court considered previously the allegation that defendant Gane retained a recruiting firm to search for plaintiff's replacement when it denied plaintiff's Motion for Reconsideration.  (Id. (citing Pl. Br. in Supp. of Mot. for Recons., May 2, 2011, ECF No. 69-1, at 2–3)).  Thus, defendants maintain that the law-of-the-case doctrine precludes plaintiff from advancing Count 5.

Second, defendants argue that plaintiff failed to obey the Court's Order to file a certification containing each revived claim and citations to corresponding allegations based on new evidence.  (Defs.' Br. at 9; see Order at 6, ECF No. 129).  Again, they assert that Count 5 – plaintiff's "removal from office" claim – is a revival of her previously-dismissed discriminatory demotion claim, and as such, had to be included in plaintiff's certification.  (Defs.' Br. at 9–10).  Defendants note, however, that Count 5 was not included in the certification provided by plaintiff, and that "[b]y failing to identify the previously dismissed demotion claim as one she

14

now seeks to revive, Plaintiff has, at minimum, laid the groundwork for further 'creating

confusion for the defendants and the Court.'" (Id. (quoting Order at 3, ECF No. 129)).

Defendants therefore argue that the Court must reject the renewed claim.  (Id. at 10).

     Third, defendants argue that plaintiff cannot show good cause pursuant to Rule 16 to

allow the Court to grant leave for plaintiff to amend the complaint to include Count 5.  (Id. at

13–15).  Defendants assert that there is "no question that [plaintiff] had knowledge of the

'removal from office' . . . claim[] prior to the amendment deadline, as she asserted the same

claim[] in both the original Complaint and the [first amended complaint]."  (Id. at 14).

Fourth, defendants contend that, even if the Court concludes the law-of-the-case doctrine does

not bar plaintiff from advancing Count 5, plaintiff has still failed to state a prima facie claim for

removal from office.  (Id. at 16–19).  Specifically, defendants claim that nothing in the Second

Amended Complaint cures the pleading deficiency identified by the Court in its June 6, 2011,

Opinion, namely, that plaintiff "can hardly make a claim for discriminatory demotion when the

position at issue was only available come December 2010 because [plaintiff],a female, had

previously refused to accept the job."  (Id. at 17 (citing Op. at 4–5, June 6, 2011, ECF No. 80)).

     *Count 7: Violation of NJLAD – Adverse Employment Action Severance Policies*

     Plaintiff argues that she has pleaded a prima facie claim for disparate treatment in the

form of lucrative severance packages doled out on the basis of gender (Count 7).  (Pl. Br. at 9,

ECF No. 137; see Second Am. Compl. ¶¶ 146–152, ECF No. 137-1).  Plaintiff alleges that while

defendants "forced [p]laintiff to choose between losing her job or accepting a demotion," seven

male executives whom defendants sought to terminate were "allowed to resign and received at

least one year of severance pay and bonus."  (Pl. Br. at 9–10 (asserting this claim "alleges new facts")).

Defendants counter that plaintiff has failed to state a prima facie claim with respect to Count 7 because plaintiff resigned and did not execute a release of claims, unlike her alleged male peers, who were terminated and did sign such a release.  (Defs.' Br. at 19, ECF No. 138). Accordingly, defendants submit that the Court should deny plaintiff's motion to amend because Count 7, as alleged by plaintiff, is futile.  (Id.).  In addition, defendants argue that the Court should deny plaintiff leave to amend the complaint to include Count 7 because plaintiff has not shown good cause under Rule 16.  (Id. at 13–15).  That is, defendants assert that plaintiff had sufficient information to set forth a claim for disparate treatment in the form of discriminatory severance packages by November 2010, or at the latest, by May 2011, which, defendants assert, is prior to the expiration of the Court's deadline to amend the complaint.  (Id.).

## B. PROPOSED REVIVED CLAIM ALLEGING CONSTRUCTIVE DISCHARGE (COUNT 6)

The proposed Second Amended Complaint seeks to revive or renew one claim – Count 6 – alleging constructive discharge, which the Court dismissed previously for failure to state a claim on which relief could be granted and denied plaintiff's motion for reconsideration on same. (See Op. at 4–5, Apr. 15, 2011, ECF No. 64; Op. at 4–5, June 6, 2011, ECF No. 80).  Plaintiff, however, seeks leave to amend the complaint to include Count 6 because she argues she has obtained new evidence that dictates reconsideration of this previously dismissed claim.  (Pl. Br. at 10–12, ECF No. 137; see Second Am. Compl. ¶¶ 132–145, ECF No. 137-1).

16

*Count 6: Violation of NJLAD – Constructive Discharge*

Plaintiff asserts that she has cured the pleading deficiencies identified previously by the Court with respect to her claim for constructive discharge. (Pl. Br. at 10–12). Specifically, plaintiff submits that defendant Gane demoted her on June 9, 2010 with the intent to cause her resignation. (Id. at 11). Plaintiff claims that she obtained copies of an e-mail exchange between defendant Gane and a human resources representative, in which defendant Gane summarized his meeting with plaintiff where he informed her of the demotion and "wanted to make . . . clear that he had told [p]laintiff that if she did not accept the demotion, she would be separated from the company[.]" (Id.). From this statement, plaintiff posits, a jury may infer that defendant Gane intended the demotion to cause plaintiff's resignation. (Id. (claiming evidence of the e-mails were obtained on February 17, 2012 in document production)). She contends that the intent to cause an involuntary resignation combined with actual resignation constitutes constructive discharge. (Id. at 11–12). Plaintiff further asserts that where there is evidence of intent to cause involuntary resignation, an employer should be estopped from claiming employment conditions are insufficiently objectively intolerable to constitute constructive discharge. (Id. at 12).

Defendants counter that the law-of-the-case doctrine bars plaintiff from amending her complaint to plead Count 6 because the Court dismissed previously that claim with prejudice and denied plaintiff's motion for reconsideration on same. (Defs.' Br. at 11, ECF No. 138). Defendants contend that plaintiff's allegations based on purportedly newly-discovered evidence are insufficient to overcome the law-of-the-case doctrine because the new evidence does not differ materially from the evidence that plaintiff had set forth in support of the dismissed claim. (Id. at 12). For instance, defendants aver that the Court considered previously the allegation that

17

defendant Gane intended to discriminate against plaintiff when he allegedly demoted her.  (Id.).

Thus, defendants maintain that the law-of-the-case doctrine bars plaintiff from reasserting a

claim for constructive discharge.

Defendants also argue that, even if the Court concludes the law-of-the-case doctrine does

not bar plaintiff from advancing Count 6, plaintiff has failed to state a prima facie claim for

constructive discharge.  (Id. at 16).  That is, defendants submit that the constructive discharge

claim is futile because it still suffers from the defects noted in the Court's April 15, 2011

Opinion.  (Id. at 16–19).  Specifically, defendants claim that plaintiff's assertion – that defendant

Gane intended to cause her resignation – is implausible because plaintiff did not assert in her

original complaint or first amended complaint that defendant Gane informed plaintiff that

"separation from employment" would occur upon her refusing the demotion.  (Id. at 18).

Moreover, even if defendant Gane harbored such an intent, defendants maintain that alone would

not support a constructive discharge claim because the single case plaintiff cites in support of her

theory is inapposite (id. at 19 n.8), and the Court determined that her working conditions were

not otherwise sufficiently intolerable to support a constructive discharge claim (id. at 19).

Finally, defendants assert that plaintiff cannot show good cause pursuant to Rule 16 to

allow the Court to grant leave for plaintiff to amend the complaint and include Count 6.  (Id. at

13–15).  Defendants claim that there is "no question that [plaintiff] had knowledge of the . . .

constructive discharge claim[] prior to the amendment deadline, as she asserted the same claim[]

in both the original Complaint and the [first amended complaint]."  (Id. at 14).

### C. Proposed New Facts in Support of Pending Pay Inequity Claim (Count 2)

Plaintiff also seeks to include in the proposed Second Amended Complaint new facts in support of her pending pay inequity claim under the NJLAD (Count 2).  (Pl. Br. at 4–6, ECF No. 137).  Specifically, plaintiff seeks to allege that five months after she requested the title of President, and six weeks before her resignation, defendants Gane and Boyko asked KornFerry to recruit a replacement for plaintiff, supplied KornFerry with plaintiff's job description, and indicated that the replacement would possess the title "President."  (Id. at 5–6 (claiming evidence was obtained on February 24, 2012, in KornFerry's response to subpoena after defendant SDI failed to disclose it upon prior request)).  Additionally, plaintiff provides evidence showing there were "eight stock grant plans" in which only males participated.  (Id. at 6 (claiming evidence was obtained on February 17, 2012 upon specific request after defendant SDI failed to disclose it upon prior request)).  Defendants do not appear to oppose this aspect of plaintiff's motion.

## IV. Discussion

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure."  Karlo v. Pittsburgh Glass Works, LLC, No. 10-1283 (NFB), 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011).  Rule 15 states, in pertinent part, "a party may amend its pleadings only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order."  Karlo, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).  Third Circuit courts "have consistently reached the same conclusion: a party seeking to amend the pleadings after the deadline set by the Court must

satisfy the requirements of Rule 16(b)(4) – i.e., they must show 'good cause.'" Id. (citations

omitted).  Therefore, if a party has filed a motion to amend "after the deadline set by the Court,

the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule

15." Id. at *2.  Here, on September 26, 2012, the Court extended the deadline for plaintiff to file

a motion to amend the complaint until October 5, 2012.  (Order, ECF No. 134).  Because

plaintiff timely filed her motion for leave to file a Second Amended Complaint on October 5,

2012 (see ECF No. 137-1), pursuant to the Court's extended deadline, her motion to amend is

governed by the more liberal Rule 15 standard, rather than the Rule 16(b) "good cause" standard.

Under Rule 15, the Court may deny leave to amend the pleadings only where there is (1)

undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure

deficiencies, or (5) futility of amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962); Grayson

v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff

requests leave to amend a complaint . . . such leave must be granted in the absence of undue

delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").  Here, defendants

argue primarily that the Court should deny plaintiff's motion for leave to file a Second Amended

Complaint because of the futility of the amendment; that is, defendants argue that plaintiff has

not stated a prima facie claim for each of her proposed counts.  See Hill v. City of Scranton, 411

F.3d 118, 134 (3d Cir. 2005) (establishing that "it would have been futile to allow [plaintiff] to

amend his complaint because his allegations before the District Court did not state a claim on

which he could have obtained relief").

A court will consider an amendment futile if it "is frivolous or advances a claim or

defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc.,

133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted).  To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Harrison Beverage, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.").  A two-part analysis determines whether this standard is met.  Fowler, 578 F.3d at 210 (citing Ashcroft v. Iqbal, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim.  Fowler, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions.  Id. at 210–11; West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); see also Iqbal, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; accord Fowler, 578 F.3d at 211.  As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  556 U.S. at 678.  The plausibility

21

standard is not a "probability requirement," but the well-pleaded facts must do more than

demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to

infer more than the mere possibility of misconduct." Id. at 678–79 (citations omitted) (internal

quotation marks omitted).  This "context-specific task . . . requires the reviewing court to draw

on its judicial experience and common sense." Id. at 679.

*Count 1: Violation of NJLAD – Failure to Promote because of Gender*

The NJLAD requires that "[a]ll persons shall have the opportunity to obtain employment .

. . without discrimination because of . . . sex[,] . . . subject only to conditions and limitations

applicable alike to all persons."  N.J.S.A. § 10:5-4.  Specifically, in the employment context, the

NJLAD provides:

> It shall be an unlawful employment practice, or, as the case may be,
> an unlawful discrimination:
>
> a. For an employer, because of the . . . sex . . . of any individual . . .
> to refuse to hire or employ or to bar or to discharge or require to
> retire, unless justified by lawful considerations other than age, from
> employment such individual or to discriminate against such
> individual in compensation or in terms, conditions or privileges of
> employment. . . .

N.J.S.A. § 10:5-12.

To state a prima facie claim for failure to promote because of gender under the NJLAD,

plaintiff must show, "by a preponderance of the evidence, that: '(1) [plaintiff] is within a

protected class; (2) [plaintiff] sought and was qualified for the promotion; (3) [plaintiff] was

rejected for the promotion; and (4) nonmembers of [plaintiff's] protected class were treated more

favorably.'" Smith v. Twp. of E. Greenwich, 519 F. Supp. 2d 493, 506 (D.N.J. Oct. 30, 2007)

(quoting Rogers v. Alternative Res. Corp., 440 F. Supp. 2d 366, 371 (D.N.J. July 27, 2006)).

With respect to the fourth element, plaintiff must plead facts alleging that "'the promotion went to someone with equal or lesser qualifications who was not in the protected class.'" Id.; see, e.g., Bermingham v. Sony Corp. of Am., 820 F. Supp. 834, 853–54 (D.N.J. Nov. 20, 1992); Pepe v. Rival Co., 85 F. Supp. 2d 349, 365 (D.N.J. Dec. 14, 1999) (citations omitted).

The Court finds that plaintiff has stated a prima facie claim for disparate treatment in the form of failure to promote because of gender under the NJLAD.  First, plaintiff alleges that she is a woman (Second Am. Compl. ¶ 62, ECF No. 137-1), which satisfies the first prong of the prima facie claim because women are a protected class under the NJLAD.  See N.J.S.A. § 10:5-12. Plaintiff also alleges that she applied for and was qualified for the position of President of GSO (Second Am. Compl. ¶¶ 73, 77), and that defendant SDI "ignored" her "request" to be promoted from Vice President to President because she is a woman (id. ¶¶ 74, 79).  These well-pleaded allegations are sufficient for purposes of establishing the second and third prongs of a prima facie claim for failure to promote under the NJLAD.

With respect to the fourth prong, plaintiff alleges that defendants Gane and Boyko contacted executive recruiter KornFerry, instructed it to recruit for the position of President of GSO, and used her job description as Vice President of GSO to recruit for the position of President.  (Id. ¶ 75).  To that end, she alleges that defendants "were changing her position's title to 'President' [and] that they were recruiting to replace [her]."  (Id. ¶ 76).  Plaintiff claims that defendants "refused to consider [her] for the job of 'President, Services' because of her gender, even though her performance that year had exceeded expectations and she was responsible for having built the business from nothing."  (Id. ¶ 77).  While plaintiff does not allege specifically

that defendants filled the position of President with a male candidate of equivalent or lesser qualifications, she alleges that defendant Gane – a male – "took over" her job.  (Id. ¶ 78).

Taking these allegations as true, the Court finds that plaintiff has pleaded facts sufficient to satisfy – by a preponderance of the evidence – the fourth prong of a prima facie claim for failure to promote because of gender under the NJLAD.  That is, plaintiff has pleaded facts sufficient to show that it is at least "plausible" that defendants did not promote her – or even consider her candidacy for the position of President of GSO – because of her gender.  (See id. ¶ 79 ("Defendants refused to consider [plaintiff] for the job of 'President, Global Services' because of her gender.")).  Indeed, plaintiff's well-pleaded factual allegations, which the Court must take as true for purposes of this motion, permit an inference that defendants ignored her request to be promoted because of her gender, effectively converted her position from Vice President of GSO to President, and gave that position, which is the functional equivalent of President, to defendant Gane, a male.  Thus, the Court finds that Count 1 – alleging a violation of the NJLAD for failure to promote because of gender – is not futile, and the Court will allow plaintiff to amend the complaint to include it.

*Count 2: Violation of NJLAD – Gender-Based Pay Inequity (New Facts Alleged)*

Plaintiff seeks to add new facts to the pending gender-based pay inequity claim.  Specifically, plaintiff's Second Amended Complaint includes facts allegedly relating to the pay inequity claim that "were revealed in the documents that the Defendants produced [in] February 2012."  (Pl. Br. at 4, ECF No. 137; Second Am. Compl. ¶¶ 73–75, 93–98).  Defendants do not appear to oppose the inclusion of these facts.  The Court, moreover, finds no undue delay, bad faith on the part of plaintiff, undue prejudice to defendants, or futility in allowing plaintiff to

amend her complaint and include these new facts.  It appears that plaintiff has acted diligently in the discovery process, as she initially filed a motion for leave to file a Second Amended Complaint on May 18, 2012 (ECF No. 113), only three months after allegedly procuring the new evidence from KornFerry and defendants.  (Pl. Br. at 4–6).  The Court terminated that motion on August 28, 2012 (ECF No. 129), without prejudice to plaintiff's right to re-file, which she did in a timely fashion with the instant motion (ECF No. 135).  Thus, there is no indication of undue delay or bad faith on plaintiff's behalf.  Further, the Court finds no undue prejudice to defendants because plaintiff alleges the new facts merely to bolster a pending claim for gender-based pay inequity.  That is, the facts do not appear to enlarge or change the scope of the pending claim to such an extent that defendants would be unduly prejudiced in their preparation or position if the Court were to grant the motion.  Thus, the Court grants plaintiff's motion for leave to file a Second Amended Complaint to include the new facts (see Second Am. Compl. ¶¶ 73–75, 93–98) alleged in support of her pending gender-based pay inequity claim (Count 2).

   *Count 3: Violation of NJLAD – Discriminatory Stock Awards*

   "An employee may bring a suit for discrimination – intentional or otherwise – under either a disparate treatment or disparate impact theory."  Bratek v. TD Bank, N.A., No. 11-3049 (RBK), 2012 WL 603299, at *3 (citing Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 398 (2005)).  "A disparate treatment theory describes a situation where an employer treats some individuals less favorably than others because of a protected characteristic," such as gender.  Id. Unlike the disparate impact theory, a prima facie claim for a violation of the NJLAD under the disparate treatment theory requires a showing of the employer's discriminatory motive.  Id. However, "[b]ecause it is often difficult to find direct proof of discrimination in alleged disparate

25

treatment situations, New Jersey has adopted the procedural burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)." Id.  The McDonnell Douglas framework "allows a plaintiff to prove discrimination through circumstantial evidence." Id.

> Specifically, under the McDonnell Douglas framework, the plaintiff

>> must first establish a prima facie case of discrimination.  Once established, an inference of discrimination is created and the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action.  If the employer meets this requirement, the burden then shifts back to the plaintiff to demonstrate that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision.

> Id. (internal citations and quotation marks omitted).

Although plaintiff bears the initial burden of establishing a prima facie case of discrimination, it is a "rather modest" burden that is "meant to 'demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent.'" Id. (quoting Henry v. New Jersey Dept. of Human Servs., 204 N.J. 320, 331 (2010) and Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005)).  "When evaluating the validity of a plaintiff's prima facie case, the court is to look solely at the evidence pled by the plaintiff, regardless of defendant's claims to the contrary." Id. (citing Zive, 182 N.J. at 448).  As it relates specifically to establishing a prima facie case of gender discrimination under the NJLAD, plaintiff must show that she "received different treatment from that received by other individuals similarly situated and that the disparate treatment was based upon her gender."  King v. Cape May Cnty. Bd. of Freeholders,

2007 U.S. Dist. LEXIS 57515, at *8 (D.N.J. Aug. 8, 2007) (internal citations and quotation marks omitted).

Here, the Court finds that plaintiff has alleged facts sufficient to set forth a prima facie claim of disparate treatment under the NJLAD in the form of gender-based discriminatory stock awards.  Plaintiff alleges that "in 2007 and thereafter, [defendant SDI] adopted 'Co-Investment' stock purchase plans and other stock grant plans for which 'Executives' were eligible to participate."  (Second Am. Compl. ¶ 98, ECF No. 137-1).  Although plaintiff was an "executive" eligible to participate in those stock plans during the relevant period in which defendant SDI adopted and offered them, she claims that SDI's Remuneration Committee "did not give any grants, stock options or invitations to participate in the aforementioned plans to [plaintiff] because of her gender."  (Id. ¶ 102).  In contrast, plaintiff alleges that SDI's Remuneration Committee "gave stock options, [] stock grants and invitations to participate in and purchase stock under various plans to male employees who were similarly situated to [plaintiff]."  (Id. ¶ 101).  As a result of her purported gender-based exclusion from participation in those stock plans, plaintiff claims that she suffered damages, including "lost earnings, lost stock options and stock grants benefits and other financial losses, as well as humiliation, embarrassment, emotional and physical distress and mental anguish."  (Id. ¶ 106).

Taking plaintiff's well-pleaded allegations as true, the Court is satisfied that plaintiff has alleged facts showing that defendant SDI treated her differently than other individuals similarly situated, *i.e.*, male executives who were offered such stock plans and reaped the attendant financial benefits therefrom.  Plaintiff has also pleaded facts sufficient for the Court to infer reasonably that defendant SDI excluded plaintiff on the basis of her gender.  (See id. ¶¶ 99–106).

27

Given plaintiff's "modest burden" at this procedural stage, the Court is satisfied that her "factual scenario is compatible with discriminatory intent." Bratek, 2012 WL 603299, at *3 (citations omitted). Accordingly, the Court finds that Count 3 – alleging a violation of the NJLAD for disparate treatment in the form of discriminatory stock awards – is not futile, and the Court will allow plaintiff to amend the complaint to include it.

*Count 4: Violation of NJLAD – Disparate Impact Discrimination in Stock Plans*

"A disparate impact theory . . . describes a situation where an employment practice is facially neutral but has a disproportionate impact on a protected group. Proof of a discriminatory motive is not required." Bratek, 2012 WL 603299, at *3 (citing Gerety, 184 N.J. at 398–99). However, the "Third Circuit has found that a plaintiff's prima facie burden for disparate impact claims is 'heavier than it is when disparate treatment is alleged.'" Id. at *6 (quoting Cherchi v. Mobil Oil Corp., 693 F. Supp. 156, 166 (D.N.J. May 18, 1988) aff'd, 865 F.2d 249 (3d Cir. 1988)). "To sufficiently plead a disparate impact claim, a plaintiff must show that a facially neutral employment policy 'resulted in a significantly disproportionate or adverse impact on members of the affected class.'" Id. (quoting Gerety, 184 N.J. at 399); see Rodriguez v. AT&T, No. 89-1313 (CSF), 1992 WL 88074, *7 (D.N.J. April 6, 1992) (noting that, in order to state a prima facie claim for disparate impact discrimination, a plaintiff has the burden of showing that "the employer's facially neutral practice had a significant discriminatory impact upon members of plaintiff's protected class") (internal citations and quotation marks omitted).

Thus, the prima facie showing for disparate impact discrimination is a two-part requirement: "plaintiff must point to a specific employment policy or practice, and must present proof that the employment policy or practice resulted in disproportionate impact on the protected

class." Bratek, 2012 WL 603299, at *6 (citing Newark Branch, NAACP v. Town of Harrison, 940 F.2d 792, 798 (3d Cir. 1991)); see United Prop. Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J. Super. 1, 47 (App. Div.) (citation omitted), certif. denied, 170 N.J. 390 (2001). The first element can be met "for example, when an employment practice, such as the use of a qualifying examination, has a disproportionate impact upon a protected class." Bratek, 2012 WL 603299, at *7 (citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 120 (3d Cir. 1983)). With respect to the second prong, "[a]n adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact." Massarsky, 706 F.2d at 121 (citations omitted).

Here, the Court finds that plaintiff has failed to state a prima facie claim for disparate impact discrimination with respect to the manner in which defendant Smiths Group awarded its stock plans because she has not alleged that a facially neutral practice or policy "resulted in a significantly disproportionate or adverse impact on members of the affected class." Bratek, 2012 WL 603299, at *6 (citation and internal quotation marks omitted). Plaintiff alleges that only "executives" are eligible to participate in defendant Smiths Group's stock grant and purchase plans. (Second Am. Compl. ¶ 111). She further alleges that "SDI has 94 positions in senior management, and at all relevant times, there were only three senior management position[s] [] held by women." (Id. ¶ 112). Plaintiff concludes "the eligibility standard of 'Executive' in the stock grant and purchase plans that were adopted by [defendant] Smiths Group has a disparate impact on women." (Id. ¶ 117).

Even accepting plaintiff's well-pleaded allegations as true, the Court cannot find that the proposed Second Amended Complaint adequately sets forth a claim for disparate impact arising from the executive eligibility criteria for the stock grant and purchase plans. Plaintiff alleges no

facts to establish a causal relationship between the facially neutral eligibility criteria –

specifically, the executive requirement – and the alleged disparate impact on women.  See

Wheeler v. Commonwealth Dep't of Labor & Indus., No. 10-2022, U.S. Dist. LEXIS 43481, at

*20–21 (E.D. Pa. Mar. 29, 2012) (identifying causation as a necessary showing for a prima facie

claim of disparate impact discrimination, and noting that, to establish causation, a plaintiff "must

present 'statistical evidence of a kind and degree sufficient to show that the practice in question

has caused exclusion of applicants for jobs or promotions because of their membership in a

protected group'") (quoting Stagi v. AMTRAK, 391 Fed. App'x 133, 136 (3d Cir. 2010)).

Indeed, plaintiff must show causation to establish a prima facie claim for disparate impact

discrimination on the basis of gender.  See Lanning v. SEPTA, 181 F.3d 478, 485 (3d Cir. 1999)

(explaining that, to state a prima facie claim of disparate impact discrimination, a plaintiff must

demonstrate "that application of a facially neutral standard has resulted in a significant

discriminatory hiring pattern"); Newark Branch, NAACP v. City of Bayonne, 134 F.3d 113, 121

(3d Cir. 1998) ("In order to establish a prima facie case of disparate impact discrimination, the

plaintiff must demonstrate that application of a facially neutral standard has caused a

significantly discriminatory hiring pattern.") (internal citation and quotation marks omitted);

Roman v. Waste Mgmt. of N.J., No. 10-4337 (JAP), 2011 U.S. Dist. LEXIS 50910, at *15 (May

12, 2011) ("To state a claim for disparate impact, a plaintiff 'must identify the specific

employment practice that is challenged [and] show that the employment practice causes a

disparate impact on the basis of . . . sex. . . .'") (quoting Stagi, 391 Fed. App'x at 136).

     Although plaintiff identifies the executive eligibility requirement as the challenged

employment practice, she does not show that the executive eligibility requirement has in fact

caused the alleged disparate impact discrimination on women.  That is, plaintiff does not allege any facts to support the inference that the eligibility requirement, or the administration of that requirement, was responsible for the relatively low number of women who were eligible to participate in the stock grant or purchase plans.  See Roman, 2011 U.S. Dist. LEXIS 50910, at *15 (requiring plaintiff alleging disparate impact to identify not only the challenged practice, but also how that challenged practice causes the disparate impact).  The Court acknowledges that plaintiff has presented statistical evidence demonstrating that there exists a large disparity between male and female executives.  And the Court understands, accepting plaintiff's allegations as true, that only executives are eligible to participate in defendants' stock grant and purchase plans.  But plaintiff alleges no facts to permit the Court to infer reasonably that the executive eligibility requirement itself caused the disparity between the relatively low number of women who were allowed to participate in the stock plans, versus the larger number of men who were allowed to participate.  Thus, because the Second Amended Complaint fails to explain with any particularity how the eligibility requirement itself caused the alleged disparate impact on women, the Court must deny plaintiff's motion for leave to amend the complaint to include Count 4.[3]

> *Count 5: Violation of NJLAD – Adverse Employment Action Removal from Office of Vice President, Global Service Operations*

The law-of-the-case doctrine "limits relitigation of an issue once it has been decided" in the same litigation.  In re Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002).

---

[3] To the extent this theory is based on plaintiff's allegation that defendants excluded her from participation in the various stock plans because of her gender, the Court has ruled already that plaintiff may pursue that claim in Count 3 of the Second Amended Complaint.

Specifically, the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." Id. at 233 (internal citations and quotation marks omitted); see In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (noting the law-of-the-case doctrine has "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit") (internal citations and quotation marks omitted). Although courts maintain the inherent power to revisit their decisions, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (internal citations and quotation marks omitted).

Reconsideration of an issue that was decided previously in a given litigation and would otherwise be barred by the law-of-the-case doctrine is appropriate only in extraordinary circumstances. See Bosley v. The Chubb Institute, 516 F. Supp. 2d 479, 484 (E.D. Pa. May 26, 2007). Such extraordinary circumstances include situations where "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." Id. (citing Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron, 123 F.3d 111, 117 (3d Cir. 1997)). If evidence is allegedly new, the court determines whether it constitutes an extraordinary circumstance warranting reconsideration of a previously-decided issue by comparing the new evidence to evidence pleaded previously in support of that same issue. Hamilton v. Leavy, 322 F.3d 776, 787 (3d Cir. 2003) (explaining that

new evidence will justify an exception to the law-of-the-case doctrine "only if the new evidence differs materially from the evidence of record when the issue was first decided" . . . and noting "if the evidence at the two stages of litigation is 'substantially similar,' . . . the law of the case doctrine will apply").

Here, defendants claim that the law-of-the-case doctrine bars plaintiff from advancing Count 5 in the Second Amended Complaint because Count 5 – alleging violation of the NJLAD for removal from office – is simply a re-labeled discriminatory demotion claim that plaintiff pleaded previously (see First Am. Compl. ¶¶ 123–152, ECF No. 34).  (See Defs.' Br. at 9, 12, ECF No. 138).  By way of background, in her First Amended Complaint, plaintiff alleged that defendant Smiths Group violated the NJLAD by imposing on her a discriminatory demotion. (See First Am. Compl. ¶¶ 124–25).  Specifically, plaintiff alleged that on February 2, 2010, defendants Phipson and Gane informed her of impending organizational changes (id. ¶¶ 126–27), and on June 1, 2010, told her that she would be demoted from Vice President of GSO to Director of Conventional X-Ray (id. ¶ 132).  She claimed that they offered no reason or business justification for the demotion (id. ¶¶ 138, 143) and "intended to discriminate and inflict humiliation on [her]."  (Id. ¶ 139).  The Court dismissed that claim with prejudice.  (See Op. at 5, 7–8 and Order, Apr. 15, 2011, ECF Nos. 64, 65).

Plaintiff then filed a motion for reconsideration (ECF No. 69), and, on June 6, 2011, the Court denied plaintiff's motion with prejudice.  (Op. at 4–5 and Order, June 6, 2011, ECF Nos. 80, 81).  On May 18, 2012, plaintiff filed a motion for leave to file a Second Amended Complaint (ECF No. 113), and on August 28, 2012, the Court terminated that motion.  (Order, ECF No. 129).  The Court ordered plaintiff to file a renewed motion for leave to amend

containing "a proposed pleading that clearly identifies the claims that she asserts, and an attached certification that contains a table listing the (a) revived claims and (b) the allegations in the proposed pleadings that are supported by newly discovered evidence." (Id. at 7).  Thereafter, plaintiff filed the instant motion for leave to file a second amended complaint (Mot., ECF No. 135), which includes Count 5: Violation of the NJLAD – Adverse Employment Action, Removal from Office of Vice President, GSO.  (See Second Am. Compl. ¶¶ 118–131, ECF No. 137-1). Plaintiff also filed, as required by the Court's August 28, 2012 Order, a certification of Ellen O'Connell, Esq.  (ECF No. 136).  O'Connell certifies that the Second Amended Complaint revives only one count dismissed previously by the Court – Count 6, alleging a violation of the NJLAD by way of constructive discharge.  (O'Connell Cert. ¶ 3, ECF No. 136).  Thus, O'Connell did not include Count 5 as a count that the Court dismissed but which plaintiff seeks to revive.  (See Table at 2, ECF No. 136).

The Court finds that Count 5 – alleging "removal from office" – is a re-labeled version of plaintiff's discriminatory demotion claim set forth as Count 5 in the First Amended Complaint. In support of Count 5 here, plaintiff alleges that, on February 2, 2010, defendants Phipson and Gane announced a plan for organizational changes at defendant SDI.  (Id. ¶ 119).  She also alleges that defendant Gane informed her that she had to accept a director-level job in "Conventional X-Ray," which would constitute a demotion from her executive-level position of Vice President, GSO.  (Id. ¶ 120).  Plaintiff submits that defendants provided no reason or business justification for the demotion.  (Id. ¶¶ 123, 128).  She alleges that the "removal from office is an adverse employment action that occurred because of [her] gender."  (Id. ¶ 131). These allegations are substantially similar – and in some instances, identical – to the allegations

34

set forth in Count 5 (gender-based discriminatory demotion) of plaintiff's First Amended

Complaint, which, again, the Court dismissed previously (see Op. at 5, 7–8, Apr. 15, 2011, ECF

No. 64) and denied plaintiff's motion for reconsideration.  (See Op. at 4–5, June 6, 2011, ECF

No. 80).  Accordingly, the law-of-the-case doctrine precludes plaintiff from reviving Count 5,

unless plaintiff may invoke one of the three categories of extraordinary circumstances that

warrant reconsideration of an issue decided already in the same litigation.

      Here, no supervening new law has been announced, plaintiff has not identified anything

in the Court's earlier decisions (ECF Nos. 64, 80) that were clearly erroneous so as to create

manifest injustice.  Consequently, the inquiry is whether the availability of new evidence

sufficiently constitutes an extraordinary circumstance and overrides application of the law-of-the-

case doctrine.  The Court finds that the alleged new evidence does not constitute such

extraordinary circumstances.  Specifically, plaintiff argues that she obtained previously

unavailable documents and information on February 24, 2013 from executive recruiter KornFerry

in response to a subpoena.  (Pl. Br. at 5–6, ECF No. 137).  She argues that this newly acquired

information indicates that defendants contacted KornFerry while plaintiff was still employed as

Vice President of GSO and instructed KornFerry to recruit for plaintiff's position by using the

title of President and plaintiff's then-current job description.  (Second Am. Compl. ¶¶ 75, 121).

Although these facts were not pleaded in the First Amended Complaint, the Court does not find

that they rise to the level of extraordinary circumstances or provide substantial support to

plaintiff's proposed demotion/removal claim.  Further, plaintiff does not allege that these facts

were fraudulently concealed or that some other circumstance prevented earlier discovery of this

information.  See Bosley, 516 F. Supp. 2d at 485 (noting that newly discovered evidence does not

prevent application of the law-of-the-case doctrine unless such evidence was fraudulently concealed or could not have been obtained by way of due diligence) (internal citations omitted).

Finally, the Court notes that plaintiff failed to comply with its order to include a certification to the Second Amended Complaint containing a table listing all of her revived claims.  (See Order at 7, ECF No. 129).  Plaintiff attached the certification of Ellen O'Connell, but as detailed above, she certifies that the only revived claim is Count 6.  (O'Connell Cert. ¶ 3, ECF No. 136).  This representation is inaccurate because the Court concludes that Count 5 is also a claim previously dismissed with prejudice that plaintiff now seeks to revive in the Second Amended Complaint.[4]  Therefore, because the law-of-the-case doctrine precludes relitigation of Count 5, no exception to that doctrine is applicable, and because plaintiff failed to abide by the Court's explicit August 28, 2012 Order with respect to filing a comprehensive certification in support of the Second Amended Complaint, the Court must deny with prejudice plaintiff's motion for leave to amend the complaint to include Count 5.

*Count 6: Violation of NJLAD – Constructive Discharge*

"Under the NJLAD, 'constructive discharge requires not merely severe or pervasive conduct, but conduct that is so intolerable that a reasonable person would be forced to resign rather than continue to endure it.'" Anastasia v. Cushman Wakefield, 455 Fed. App'x 236, 240–41 (3d Cir. 2011) (quoting Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 28 (2002)).  To state a claim for constructive discharge under the NJLAD, the "plaintiff must show

---

[4] To be clear, the Court makes no finding as to whether plaintiff actively sought to disobey its August 28, 2012 Order (ECF No. 129) by changing the name of its "discriminatory demotion" claim to a "removal" claim and by omitting the removal claim from the O'Connell Certification. Regardless of whether plaintiff made such changes and omissions in bad faith, the Court concludes that she failed to abide by an explicit Order.

'outrageous, coercive and unconscionable' conduct that is more egregious than what is required to establish a hostile work environment claim." Id.

Before reaching the question of whether plaintiff has stated a prima facie claim for constructive discharge, the Court must discern whether the law-of-the-case doctrine precludes plaintiff from alleging Count 6 again.[5] Here, plaintiff alleged constructive discharge in her First Amended Complaint (ECF No. 34 ¶¶ 153–55), and the Court denied that claim with prejudice. (Op. at 5 and Order, Apr. 15, 2011, ECF Nos. 64, 65). Plaintiff then filed a motion for reconsideration (ECF No. 69), which the Court denied on June 6, 2011. (Op. at 4–5 and Order, June 6, 2011, ECF Nos. 80, 81). On May 18, 2012, plaintiff filed a motion for leave to file a Second Amended Complaint (ECF No. 113), which the Court terminated on August 28, 2012. (Order, ECF No. 129). The Court ordered plaintiff to file a renewed motion for leave to amend containing "a proposed pleading that clearly identifies the claims that she asserts, and an attached certification that contains a table listing the (a) revived claims and (b) the allegations in the proposed pleadings that are supported by newly discovered evidence." (Id. at 7).

Thereafter, plaintiff filed the instant motion for leave to file a Second Amended Complaint (Mot., ECF No. 135), which includes Count 6 – violation of the NJLAD for constructive discharge. (See Second Am. Compl. ¶¶ 132–45, ECF No. 137-1). As set forth

---

[5] In her reply brief, plaintiff argues, for the first time, that the constructive discharge claim is a new claim and, therefore, the law-of-the-case doctrine does not apply. (Reply Br. at 5, Nov. 12, 2012, ECF No. 141). To the extent plaintiff submits that the constructive discharge claim is in fact a new claim, the Court rejects that argument because plaintiff raised it for the first time in her reply brief. See D'Alessandro v. Bugler Tobacco Co., No. 05-5051 (JBS), 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (noting that courts have held that "a moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief") (internal citation omitted). Thus, the Court will consider the applicability of the law-of-the-case doctrine to Count 6.

above, plaintiff included the certification of Ellen O'Connell, who certifies that plaintiff seeks to revive the constructive discharge claim (Count 6) – dismissed previously by the Court – on the basis of newly discovered evidence.  (O'Connell Cert. ¶¶ 3–4, ECF No. 136).  Specifically, O'Connell cites to the following as new evidence necessitating reconsideration of the claim: defendants allegedly contacted KornFerry to recruit for plaintiff's replacement (Second Am. Compl. ¶ 133, ECF No. 137-1); defendants recruited for the title President to replace plaintiff, but used plaintiff's job description as Vice President of GSO (id.); and defendant Gane knew that demoting plaintiff would cause her to resign, told her that "separation would occur" if she did not accept the demotion, and intended this action to force her to resign (id. ¶ 135).

The Court finds that the law-of-the-case doctrine precludes plaintiff from alleging Count 6 because the Court has previously dismissed plaintiff's claim for constructive discharge, and no extraordinary circumstance justifies allowing plaintiff to advance this claim.  Again, no supervening new law has been announced, and the Court's earlier decisions (ECF Nos. 64, 80) were not clearly erroneous so as to create manifest injustice.  Therefore, the Court must examine whether the extraordinary circumstance of newly-available evidence negates operation of the law-of-the-case doctrine.  As detailed above, plaintiff alleges new evidence in support of Count 6 (see Second Am. Compl. ¶¶ 133, 135, ECF No. 137-1), but the Court concludes that evidence does not differ materially from the evidence of record when the Court dismissed previously plaintiff's constructive discharge claim.  See Leavy, 322 F.3d at 787 (noting that new evidence justifies an exception to the law-of-the-case doctrine "only if the new evidence differs materially from the evidence of record when the issue was first decided").

38

For example, plaintiff alleges that defendant Gane knew demoting her would compel her to resign and that he intended to cause plaintiff's resignation by so demoting her.[6]  (Second Am. Compl. ¶ 135).  This allegation, however, is similar to plaintiff's allegation in the First Amended Complaint that "[d]efendant Gane intended to discriminate and inflict humiliation on [] [p]laintiff, as evidenced by the means by which [] [d]efendant Gane informed her of the demotion."  (First Am. Compl. ¶ 139, ECF No. 34).  Here, plaintiff also alleges that, on June 1, 2010, defendant Gane told her that "separation would occur" if she did not accept the demotion.  (Second Am. Compl. ¶ 135, ECF No. 137-1).  This allegation, however, is substantially similar to plaintiff's allegation in the First Amended Complaint that defendant Gane informed her of the demotion and "told her that she had to confirm her acceptance of the demotion by speaking to the Human Resources Department not later than nine o'clock the next morning."  (First Am. Compl. ¶ 143).  In addition, with respect to plaintiff's allegation in the Second Amended Complaint that defendant Gane told her on June 1, 2010 that "separation would occur" if she did not accept the demotion, plaintiff could have pleaded previously that allegation because plaintiff would have had direct knowledge of the statement on the date – November 10, 2010 – she filed the First Amended Complaint.

---

[6] In her brief, plaintiff argues that she divines defendant Gane's "intent" by drawing reasonable inferences from an e-mail exchange between defendant Gane and a human resources employee in which defendant Gane expressed his objective to make clear to plaintiff that she would be separated from defendant SDI if she did not accept the demotion.  (Pl. Br. at 11, ECF No. 137). Plaintiff, however, does not mention that purported e-mail exchange in her Second Amended Complaint.  (See ECF No. 137-1).  Accordingly, the Court cannot consider its potential import because plaintiff did not fulfill her obligation of setting forth a well-pleaded allegation regarding that supposed e-mail exchange on the face of the Second Amended Complaint.

Further, in support of her constructive discharge claim, plaintiff alleges that defendants Gane and Boyko "had already met and instructed KornFerry [] to begin the search for the title, 'President, Global Service Operations'" while plaintiff was still Vice President of GSO.  (Second Am. Compl. ¶ 133, ECF No. 137-1).  The Court finds that this new allegation does not constitute an extraordinary circumstance because, even accepting it as true, it does not evidence severe or pervasive conduct that would force a reasonable person to resign rather than continue to endure said conduct.  See Cushman Wakefield, 455 Fed. App'x at 240–41.  That is, the allegation does not support – and is irrelevant to – a prima facie claim of constructive discharge.  At the time she was working as Vice President of GSO, plaintiff did not even know that defendants Gane and Boyko allegedly approached KornFerry about finding her replacement.  Therefore, plaintiff could not have been effectively forced to resign as a result of defendants' allegedly intolerable conduct.

In sum, because the law-of-the-case doctrine precludes relitigation of Count 6 and no exception to that doctrine applies, the Court must deny with prejudice plaintiff's motion for leave to amend the complaint to include Count 6.

*Count 7: Violation of NJLAD – Adverse Employment Action Severance Policies*

To state a prima facie claim for an adverse employment action under the NJLAD with respect to disparate treatment related to severance policies, a plaintiff must set forth "a situation where an employer treats some individuals less favorably than others because of a protected characteristic," such as gender.  Bratek, 2012 WL 603299, at *3 (citation omitted).  Indeed, to establish a prima facie claim for such gender-based discrimination, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . ; and (4) that similarly-situated employees outside the protected class received more

40

favorable treatment."  Gerner v. Cnty. of Chesterfield, 674 F.3d 264, 266 (4th Cir. 2012)

(internal citation and quotation marks omitted).

Here, the Court finds that plaintiff has failed to state a prima facie claim for an adverse

employment action under the NJLAD with respect to defendant SDI's severance policies

because, unlike the male executives plaintiff cites who were either unilaterally terminated or

involuntarily discharged, plaintiff resigned from her position.  (See Second Am. Compl. ¶¶

147–48).  Thus, plaintiff has failed to satisfy the fourth prong necessary to state a claim for

gender-based discrimination; that similarly-situated employees outside the protected class, i.e.,

similarly-situated male executives, received more favorable treatment.  Put simply, because

plaintiff resigned, she is not similarly situated to those male employees who were unilaterally

terminated or involuntarily discharged.  Further, given the Court's prior rulings that plaintiff was

not, as she claims (id. ¶ 148), constructively discharged, the Court finds that she was not

similarly situated to those terminated male executives so as to require defendant SDI to treat her

equally with respect to its severance policies.  That is, plaintiff was not entitled to the "lucrative

severance pay packages" that were allegedly afforded to those male executives (see id. ¶¶

148–49), and the fact that defendant SDI allegedly did not award her such severance packages

does not constitute disparate, gender-based discriminatory treatment under the NJLAD.

Accordingly, the Court denies with prejudice plaintiff's motion for leave to amend the complaint

to add Count 7

.

## V.   CONCLUSION

For the reasons stated herein, plaintiff's motion for leave to file the proposed Second Amended Complaint is granted in part and denied in part.  The Court will issue an order consistent with this Opinion.

s/Michael A. Hammer
UNITED STATES MAGISTRATE JUDGE

Date: April 29, 2013